EDWARD FRIEDERICH

*v.*

THE PEOPLE OF THE STATE OF ILLINOIS.

*Filed at Mt. Vernon October 27, 1893.*

1. ASSAULT WITH INTENT TO MURDER — *evidence of appearance of wound on post mortem examination.* On the trial of a party for an assault with intent to murder, it appeared that the defendant struck the person named in the indictment on his head with a paling, and that the latter died within two months after the assault. The court admitted in evidence the testimony of the witnesses who made a *post mortem* examination of the deceased, as to the appearance and condition of the skull fracture on the deceased, for the sole purpose, as stated by the court, of showing the appearance of the wound, but not for the purpose of showing that the defendant was responsible for the death that followed: *Held,* that the evidence was proper for the purpose for which it was admitted.

2. SAME — *malicious intent necessary.* Malicious intent is a necessary element of the crime of assault with intent to commit murder, for if the killing would have been less than murder if death had resulted, the act can not be deemed an assault with intent to commit murder. Malicious intent must therefore be proved. This need not be done by direct testimony, and may, under certain circumstances attending the act, be presumed, but not from the mere fact that a deadly weapon was used.

3. SAME — *proof of malice necessary.* On a trial of one for an assault with intent to murder, proof that the defendant struck the person assaulted with a deadly weapon, with no other evidence, either as to the

circumstances of the assault or otherwise tending to prove the intent with which he struck, is not sufficient to justify a conviction.

4. SAME—*words as a provocation.* On a trial of one for an assault with intent to murder, an instruction to the effect that words, however provoking, will not amount to considerable provocation, was held not erroneous.

5. MURDER—*when malice is presumed.* In cases of murder, malice may be presumed when no considerable provocation appears, or when all the circumstances of the killing show an abandoned and malignant heart. When the act is committed deliberately, and is likely to be attended with dangerous consequences, the malice requisite to murder will be presumed.

6. It is the deliberation with which the act is performed that gives it character. It is the opposite of an act performed under uncontrollable passion, which prevents all deliberation or cool reflection in forming a purpose. If, therefore, a person deliberately uses a deadly weapon on another, it will be presumed that it was malicious. If there is fixedness of purpose in its use it can only be from malice. It is not the use of the weapon that shows malice, but its deliberate use.

7. CRIMINAL LAW—*presumption of felonious intent—from the use of a deadly weapon.* On the trial of one for an assault with intent to kill and murder, the court instructed the jury, "that every man is presumed to intend the natural and probable consequences of his act unless a different intent be proved, and the use of a deadly weapon in making an assault will be presumed to be with felonious and malicious intent unless a different intent be proved:" *Held,* that the instruction was clearly erroneous, and calculated to mislead the jury to defendant's prejudice.

8. Such an instruction, in effect, tells the jury that the People's case is made out by proving the assault with a deadly weapon, and by it every man is presumed to intend the natural and probable consequences of his act, without reference to the circumstances under which the act is done, which is an incorrect statement of the law. A person may do an act without intending to do it.

9. SAME—*presumption that party intends the consequence of his acts.* Every sane person must be supposed to intend that which is the ordinary and natural consequence of his purposed acts. To hold him criminally responsible for the consequence of his act, it must be the result of deliberation or purpose. He can not be held to intend the ordinary consequence of his every act.

WRIT OF ERROR to the Circuit Court of St. Clair county; the Hon. A. S. WILDERMAN, Judge, presiding.

Messrs. HOLDER & TURNER, for the plaintiff in error:

The seventh instruction given for the People is faulty in many respects. It does not state the law correctly. It would include insane persons. It also gave the jury to understand that it was necessary to prove intent by some witness, when the law is, that the intent may be drawn from the character, manner and circumstances of the assault.   *Crosby* v. *People,* 137 Ill. 325.

The ninth of the People's instructions is misleading, and is not based on evidence, though it may state a correct abstract proposition of law.

The court erred in admitting evidence of the *post mortem* examination.   Platt died by suicide, so that the defendant should not be responsible for his death.   Wharton on Crim. Law, (8th ed.) secs. 155-160; *People* v. *Rockwell*, 39 Mich. 503.

Homicide is causing the death of a human being by an act or omission but for which the person killed would not have died when he did.   Desty's Am. Crim. Law, sec. 123.

Mr. M. W. SCHAEFER, State's Attorney, for the People:

Appellant's objection to the seventh instruction is, that the proposition therein would include the drunk and insane.   It is a well known rule of law that every person is presumed to be sane until the contrary is made to appear.   The presumption of sanity of one accused of crime obtains and holds at and during every stage of the trial, until the same is overcome by evidence.   *Dacey* v. *People*, 116 Ill. 555.

Drunkenness, idiocy or insanity were not relied on as a defense in this case, and therefore the word "man," in the first line of the instruction, required no word or words of qualification.

They next object to the latter part of the seventh instruction, to-wit: "The use of a deadly weapon in making an assault will be presumed to be with a felonious and malicious

intent, unless a different intent be proved," claiming that the qualifying sentence, "unless a different intent be proved," was error. I claim that the qualifying sentence, instead of being against the plaintiff in error, was really in his favor, because malice and intent will be presumed from the use of a deadly weapon, and there is no way to overcome this presumption except by testimony showing that "his intent was different."

If one with an abandoned and malignant heart and a reckless disregard of human life makes an assault upon another, which, in its manner and circumstances, is likely to produce the death of the party assailed, not only will malice be presumed, but the specific intent to take life may also be inferred, for the reason that if, with malice, he makes an assault in a manner likely to produce death, he must be presumed to intend the result likely to—that is, which probably and naturally would—flow from his act. *Crosby* v. *People*, 137 Ill. 325; *Steffy* v. *People*, 130 id. 98; *Conn* v. *People*, 116 id. 458; 2 Bishop on Crim. Law, (8th ed.) sec. 680.

Mr. JUSTICE WILKIN delivered the opinion of the Court:

At the January term, 1893, of the circuit court of St. Clair county, plaintiff in error was convicted of an assault with intent to commit murder, and by the judgment of that court sentenced to the penitentiary for a term of five years. From that judgment this writ of error is prosecuted.

The assault, as charged in the indictment, was made upon one John Platt with a pine fence-paling, about three feet in length, two and one-half inches wide and one inch thick. A younger brother of plaintiff in error, named William, was jointly indicted with him, but at the trial a *nolle prosequi* was entered as to him. It is not denied that plaintiff in error struck Platt on the head with a board, of the description given in the indictment, producing a fracture of the skull. The controverted question on the trial was whether the assault was made with the requisite malicious intent to constitute the

crime charged. The prosecution introduced evidence tending to sustain the affirmative of that issue. Plaintiff in error and his brother both testified to facts which, if believed, would have justified a finding that the blow was struck upon a sudden heat of passion, and without malice. It appears that the assault was made on the 3d day of July, 1892. Platt died on the 23d of the following September.

On the trial the prosecution introduced the coroner, Dr. Woods, and two other physicians, who made *post mortem* examinations of the body, and by each of them proved the appearance and condition of the skull fracture at that time. This evidence was objected to and the objection overruled. That ruling is now assigned for error. The argument of counsel on this point proceeds upon the theory that the evidence was offered for the purpose of showing that plaintiff in error was responsible for the death of Platt, but it was not admitted for that purpose. On the contrary, the court expressly stated, in overruling the objection, that the evidence was only proper for the purpose of showing the appearance of the wound. The evidence was competent for that purpose.

Other objections to the rulings of the trial court in the admission and exclusion of evidence are urged as grounds of reversal, but we do not regard them as well taken or of substantial importance.

It is also insisted that the court below erred in the instructions given on behalf of the People, and this assignment of error, in our opinion, presents the only substantial question on the record. Of the twenty-one instructions given at the instance of the prosecution, four are objected to as erroneous and misleading. The seventh is in the following language:

"The court instructs you that every man is presumed to intend the natural and probable consequences of his act unless a different intent be proved, and the use of a deadly weapon in making an assault will be presumed to be with felonious and malicious intent unless a different intent be proved."

This instruction is clearly erroneous, and calculated to mislead the jury to the prejudice of the defendant. It, in effect, says that the case of the People was made out by proving the assault with a deadly weapon. By it every man is presumed to intend the natural and probable consequences of his act, without reference to the circumstances under which the act is done. This is an incorrect statement of the law. A person may do an act without intending to do it. Greenleaf says: "Every sane person must be supposed to intend that which is the ordinary and natural consequence of his purposed act." Sometimes the qualification "deliberate act" is used, but no authority can be found for holding a man to intend the ordinary consequence of his every act, as does this instruction.

A more serious objection, however, to the instruction, lies in the language, "and the use of a deadly weapon in making an assault will be presumed to be with felonious and malicious intent unless a different intent be proved." Here, again, the use of a deadly weapon in making an assault, no matter under what circumstances, is made the basis of a presumption of felonious and malicious intent. Malicious intent is a necessary element of the crime of assault with intent to commit murder, for if the killing would have been less than murder if death had resulted, the act can not be deemed an assault with intent to commit murder. Malicious intent must therefore be proved. It is true that it need not be done by direct testimony, and may, under certain circumstances attending the act, be presumed, but not from the mere fact that a deadly weapon was used. In cases of murder, malice may be presumed where no considerable provocation appears, or where all the circumstances of the killing show an abandoned and malignant heart, and in *Perry et al.* v. *The People,* 14 Ill. 496, which was an indictment like this, the trial court instructed the jury, "that if they believed, from the evidence, that Perry fired the pistol either with malice prepense or a total disregard of human life, then the law is for the People," etc. And this

court said : "Where the act is committed deliberately, and is likely to be attended with dangerous consequences, the malice requisite to murder will be presumed."

In *Davison* v. *The People*, 90 Ill. 229, an instruction passed upon used the language, "the law implies malice from the deliberate and intentional use of a deadly weapon." Justice WALKER, delivering the opinion of the court, said : "Malice is always presumed where one person deliberately injures another. It is the deliberation with which the act is performed that gives it character. It is the opposite of an act performed under uncontrollable passion, which prevents all deliberation or cool reflection in forming a purpose. If, then, a person deliberately use a deadly weapon on another it must be inferred that it was malicious. If there was fixedness of purpose in its use it could only be from malice. The deliberation excludes all other conclusions than there was malice. It is not the use of the weapon that shows malice, but its deliberate use." See Wharton on Criminal Evidence, sec. 764, and numerous cases cited in note 1, p. 628, in support of the statement, "that when a responsible person, without authority and under such circumstances as indicate deliberation, without apparent provocation or necessity, wounds another in a vital part with a deadly weapon, then malice is to be inferred."

This instruction ignores entirely the circumstances under which the weapon was used. It unqualifiedly attaches to the "use of a deadly weapon in making an assault," the presumption of a felonious and malicious intent, whether deliberately used or upon a sudden heat of passion. While the prosecution was able to prove, by the acts and declarations of the defendant, that he struck the blow with the weapon as charged, it offered no direct proof as to the immediate circumstances under which the assault was made. It can therefore readily be seen that this instruction greatly strengthened its case and weakened the defense. By it the People had the benefit of the presumption of felonious and malicious intent, without

reference to the circumstances under which the assault was made. We do not wish to be understood as intimating that the evidence, though indirect and circumstantial, was not sufficient to warrant a finding that the act was done deliberately and without provocation. This instruction authorized the jury to find the felonious intent whether so done or not. It throws into the scale, against the defendant, a presumption which the law did not authorize. Suppose the prosecution had satisfied the jury, beyond a reasonable doubt, as it manifestly did, that the defendant struck Platt with a deadly weapon, but offered no other evidence, either as to the circumstances of the assault or otherwise, tending to prove the intent with which he struck, would it be seriously contended that the crime of an assault with intent to commit murder had been established? We apprehend not. And yet this instruction would authorize a conviction in precisely such a case.

The ninth instruction is to the effect that words, however provoking, will not amount to considerable provocation, etc. We see no objection to it.

The twelfth directs the jury as to its duty in weighing the testimony of the several witnesses. The criticism made upon it is without force.

The fourteenth relates to the right of defendants in criminal cases to testify in their own behalf, and the tests to be applied to their testimony in giving it credit. One objection urged to it is, that "it was error to tell the jury that William Friederich's interest in the result of the case should be considered," etc. The answer to the criticism is, the instruction makes no such statement to the jury. William Friederich is not mentioned or referred to, except as a defendant, and if he was not such when he testified, the instruction had no application to him and could not have been so understood.

For the error indicated the judgment below will be reversed, and the case will be remanded to the circuit court for further proceedings. *Judgment reversed.*