## BRYANT v. STATE.

CRIMINAL LAW — ASSAULT — ASSAULT WITH INTENT TO COMMIT MURDER — INDICTMENT AND INFORMATION — EVIDENCE — JURORS — APPEAL AND ERROR.

1. The objection if any to an information in a criminal case, on the ground of the form of description of the crime only must first be presented to the district court to be availed of on error.

2. The finding of a trial court upon the question of the qualification of a juror who states that he has formed an opinion, should not be set aside unless error is manifest.

3. Error is not manifest, so as to require a reversal, in finding a juror qualified, who stated that he had formed an opinion upon what he had heard, having talked with some one who purported to state the facts; that it would require evidence to remove his opinion, which, however, he supposed was more of an impression than an opinion, and which opinion would not affect him in trying the case ; and he would not say. his opinion was such as would cause him to act one way or the other in the ordinary course of life ; and that it would not take less evidence for him to convict the accused than any other person with whom he was unacquainted, and he understood the presumption of innocence.

4. When the defendant by not exhausting his peremptory challenges, fails to take advantage of the opportunity to excuse a juror believed to be disqualified, the error, if any, in overruling a challenge to such juror for cause, is not reversible.

5. In a criminal case a verdict of conviction should not be set aside on error, on the ground of the insufficiency of the evidence if there is enough evidence to sustain it, unless it is entirely insufficient in law to make out the crime charged.

6. On a charge of assault with intent to commit a felony, the intent with which the assault is made constitutes the gravamen of the offense.

7. Pointing a loaded gun at another may constitute an assault; and where, at a late hour at night, a loaded rifle was pointed at a woman while she was standing on the porch of her house where she had gone to ascertain the cause of a shot she had heard, and by seeing the gun pointed at her she was put in

fear of bodily harm ; the act of pointing the rifle at her under the circumstances constituted an assault.

8. When a statute makes an offense to consist of an act combined with a particular intent — such as an assault with intent to commit a felony, that intent is just as necessary to be proved as the act itself, and must be found by the jury as matter of fact before a conviction can be had; and no intent in law, or mere legal presumption differing from the intent in fact, can be allowed to supply the place of the latter.

9. It is, however, in such a case, unnecessary to prove the specific intent by direct, positive, and independent evidence; but the jury may draw the inference as they draw all other inferences from any facts in evidence, which to their minds fairly prove its existence.

10. In considering the question of intent under a charge of assault with intent to commit murder, the jury may and should take into consideration the nature of defendant's acts constituting the assault; the temper or disposition with which they were apparently performed ; whether the instrument and means used were naturally adapted to produce death; his conduct and declarations, prior to, at the time, and after the assault, and all other circumstances calculated to throw light upon the intention with which the assault was made.

[Decided January 26, 1898. Rehearing denied April 3, 1899. Information filed in district court July 7, 1896.]

ERROR to the District Court for Fremont County, HON. JESSE KNIGHT, Judge.

William F. Bryant was convicted of the crime of assault with intent to commit murder, and sentenced to ten years in the penitentiary. He prosecuted error. The case is stated in the opinion.

*Melville C. Brown*, for plaintiff in error.

If the information does not state facts sufficiently to describe a crime, the question of its sufficiency can be raised for the first time on error, though the petition in error does not raise the question. The gravamen of the crime exists, not in the assault but in the intent. (U. S. v. Fox, 5 Otto, 670.) An attempt must be manifested by acts which would end in the consummation of the particular offense, but for the intervention of circum-

stances, independent of the will of the party. (People v. Murray, 14 Cal., 159.) The mere fact that a man is armed, and proposing to commit an assault, will not subject him to the penalty for such an offense, unless he carries the intention into effect. (Yoes v. State, 9 Ark., 42; Young v. State, 7 Tex. App., 75.) As to what constitutes an assault, see Whart. Cr. L., 7th ed., Secs. 1241–42, 1245.) In the case at bar there was no violence, either intended or attempted, and hence no assault. The intent must be specifically proved. (State v. Negro Bill, 3 Harr., 571; State v. Johnson, 35 Ala., 363; Morman v. State, 24 Miss., 54; State v. Neal, 37 Me., 468; 1 Bish. Cr. L., 7th ed., Secs. 770–71, 729, 413, 342–43.) There must be some proof of the intent beyond the mere act, which, as in this case, may of itself be practically harmless. The fact that defendant did not shoot at the woman proves conclusively that there was no intent to kill or murder. The act of defendant did not proceed far enough to make it indictable. (See Hicks v. Com., 19 Am. St., 891; Gray v. State, 63 Ala., 73; State v. Wilson, 30 Conn., 500; State v. Jordan, 75 N. C., 27; Smith v. Com., 93 Am. Dec., 686; State v. Baller, 53 Am. St., 66; Taylor v. State, 50 Ga., 79; Mulligan v. People, 5 Park. Cr., 105; Stabler v. Com., 4 Am. R., 653. As to necessary proof of intent and act, see Patterson v. State, 85 Ga., 131; Callahan v. State, 21 O. St., 306; Roberts v. People, 19 Mich., 401; 10 id., 212; 24 Tex. App., 128; 26 id., 333; 116 Ill., 458; 10 Ark., 318; 52 Ala., 391; 86 id., 16; 5 So., 651; U. S. v. Mc Clare, 17 Bost. L. R., 439.

*Benjamin F. Fowler*, attorney general, for the State, contended that the case of Tway v. State, 50 Pac., 188 (Wyo.), settled the questions raised respecting the information.

Potter, Chief Justice.

The information charged plaintiff in error with having unlawfully, felonously, purposely, and with premeditated

malice, perpetrated an assault upon one Frankie McVay with intent to commit murder in the first degree. The crime charged is defined by Section 18 of the Crimes Act of 1890, as follows:

"Whoever perpetrates an assault, or an assault and battery, upon any human being with intent to commit a felony, shall be imprisoned in the penitentiary not more than fourteen years."

The merest suggestion is made in the brief of counsel for plaintiff in error, that the information may be insufficient to such an extent that it can be raised in this court for the first time. There was no motion to quash, nor was any objection made to the information in any way in the trial court. It certainly describes a crime. The objection to form of description only must be first presented to the district court to avail here on error. Tway v. State (Wyo.), 50 Pac., 188.

It is urged, as ground for reversal, that the court erred in denying the challenges of defendant for cause to two jurors, Mr. Coon and Mr. Jones. Being examined upon the *voir dire*, Mr. Coon answered the prosecutor that he had formed an opinion based upon what he had heard. In response to questions by counsel for the accused, and by the court, he stated, in substance, that he had talked with some one who purported to state the facts, and from that had formed his opinion, which it would require evidence to remove; that he had supposed he had an impression rather than an opinion. That it would not affect him in trying the case; he would not say that it was such an opinion as would cause him to act one way or the other in the ordinary course of life. That it would not take less evidence for him to convict the accused than any other person with whom he was unacquainted. That he understood the legal presumption of innocence.

It was held in Carter v. Territory, 3 Wyo., 193, that the finding of a trial court upon the question of the qualification of a juror who states he has formed an opinion, should not be set aside unless error is manifest. The

district court found that the opinion of the juror was not of such strength as to disqualify him.   We do not think error in such ruling is manifest.

With regard to the other juror, Mr. Jones, he had stated that he was prejudiced against the accused as a man, but not in the present case; that he could, however, give him a fair and impartial trial.   The prejudice would seem to have existed in the mind of the juror because of the character or habits of the prisoner.   It is unnecessary, however, to consider the effect of such bias upon his qualification as a juror.   The defendant did not exhaust his peremptory challenges, but waived the last one, which he was entitled to exercise.   When the opportunity exists to excuse a juror who is believed to be disqualified, and advantage is not taken to it, the error, if any, in overruling a challenge for cause, is not reversible.   Carter v. Territory supra.

The defendant could have challenged the juror peremptorily.   He failed to avail himself of that privilege, evidently satisfied to allow him to remain.   He can not now complain.

The principal contention on behalf of plaintiff in error is, that the evidence was insufficient.

Although not strong, the evidence was sufficient to convince the jury of the guilt of the accused, and the trial judge who heard the testimony, saw the witnesses, and knew the jury, refused to disturb the verdict.   It should not be interfered with by this court, on error, if there is enough evidence to sustain it, unless entirely insufficient in law to make out the crime charged.   It is truly said by counsel that the intent of the assault constitutes the gravamen of the offense.   There was a conflict between the testimony of the prosecuting witness, and the accused. The former, who kept, or was an inmate of a house of ill repute, testified that at a late hour in the night she heard a shot, and went out of the door to discover the cause, not anticipating any personal danger ; that she walked to the corner of the porch, and as she went around the corner,

some one drew a gun, such as a rifle, and pointed it at her. She then screamed, and immediately ran into the house. She heard some one coming in at the kitchen door, and she ran out of the house and across the street, where she met some gentlemen. They proceeded to investigate, and found a rifle upon the ground, which, upon examination, proved to be loaded, and was afterward discovered, and in the trial admitted, to belong to plaintiff in error. He was taken in charge by the officers, to whom he made statements which were evasive, to say the least; and on that night, he refused to claim ownership of the rifle. He did not shoot at the woman, but she said there was not time for him to do so, as she left so hurriedly. The plaintiff in error admitted being around the house with the gun; and makes a somewhat unreasonable explanation of his purpose in being there in that condition. He said, "I takes my rifle, pulls down the lever and sights it, and watches from that side of the fence; I hears some little noise; there's a kitchen door, I goes up and listens; walked around to the left side of the door, and the lady comes out; she sees me and throws up her hands and disappears around the corner of the house; no one shows up; I lays this gun down, and walks up and listens at the kitchen door, walks right around to the front of the house, and Pope and Mc-Cann and Vidal were in the middle of the street." Pope and McCann were officers. He testified that the gun was on his arm, when the woman appeared, and that it was not drawn up or cocked to shoot her at all. His excuse for being around there with the gun, was to the effect that he was looking for some criminals for whom a reward had been offered, but the explanation is not very satisfactory, nor sufficiently clear to account for his actions, nor the necessity of the manner in which he had armed himself.

The jury must have believed the story of the woman, and the question arises whether the facts detailed by her are sufficient to sustain the verdict.

An assault is defined by the statute as follows:

"Whoever, having the present ability to do so, unlaw-

fully attempts to commit a violent injury on the person of another, is guilty of an assault."

It is clear that pointing a loaded rifle at another may constitute an assault. At a late hour at night (about twelve or one o'clock), outside of another's house, pointing such a weapon at one who comes out of the house, to an ordinary mind would not appear an insignificant affair. Such an act, under such circumstances, is not usually to be considered a mere pastime or an evidence of innocent sport or amusement. A person in possession of that kind of an instrument has the present ability to commit a violent injury upon the person of another who may be within reach. It is not required of us to concede or deny that in the trial of an accused upon a charge of an assault with intent to murder, the mere fact of pointing a rifle at another, will, in all cases, prove a murderous design. In this case there are other facts which it was competent for the jury to consider. His statement of his purpose that night, his answers to the officers, an attempt to escape their observation, which was testified to, together with all the attendant circumstances which need not be repeated here. It may, however, be well to advert to some additional items of testimony disclosed in the record. It appeared from the testimony of Bryant that the shot which was heard was fired from his gun accidentally. This shot not only led the prosecuting witness to investigate the cause, but brought the officers upon the scene. The woman, meeting one or more of them as she ran out of the house, stated that some one had pointed a gun at her. One of the officers, shortly after that, found Bryant in the house where he had, as elsewhere appears, ordered a man he found there to move on. It was then discovered upon questioning the woman, that the weapon pointed at her was a long one. Upon searching Bryant and finding no gun upon his person he was ordered to go to bed. After the rifle was found, the officers started down the street, when they observed some one jump up and start to run. They hailed and commanded him to

stop. He did so, and it was found to be Bryant. He spoke to the officers saying, "Is that you, Bill?" and the latter responded, using his own language, "Yes, now you will have to come on with us ; you have fooled along as long as you can."

On the basis of Bryant's testimony there is something mysterious about his actions that night. They seem incompatible with innocence of any criminal purpose.

As the jury, upon all the testimony, have determined that the plaintiff in error was guilty of the crime charged; and as there is evidence, which, if true, is sufficient to establish the crime; we are not disposed to disturb the verdict.

The judgment will be *affirmed*.

CORN, J., concurs.

KNIGHT, J., did not sit.

On Petition for Rehearing.

POTTER, CHIEF JUSTICE.

On application for rehearing counsel for plaintiff in error again adverts to the evidence, and insists that it is insufficient to establish either the making of an assault, or an intent to commit murder.

The authorities cited by counsel upon the proposition that there was no evidence of an assault do not support his contention. Yoes v. State, 9 Ark., 42, was a case of assault and battery. A conviction was set aside because of the giving of an instruction to the effect that if the defendant called the prosecuting witness out for the purpose of having a difficulty with him he must be found guilty; and it was held that the motives which induced the defendant to go to the place where the witness was, might be legitimately inquired into in case it should be proven that he had actually made an assault in pursuance of his preconceived and settled intention, but could not under any state of the case have furnished conclusive evidence of his guilt.

In People v. Murray, 14 Cal., 160, the court holds that there is a difference between preparation and attempt, and applied that principle to the case in hand where the accused was charged with an attempt to contract an incestuous marriage. The difference between preparation and attempt was illustrated by the court by reference to the purchase and loading of a gun with the declared intention of shooting a neighbor; and it was said, "Until some movement is made to use the weapon upon the person of his intended victim, there is only preparation and not an attempt."

In the case at bar not only had the gun been obtained and loaded, but the defendant resorted to the house of the one charged to have been assaulted, and as the latter testified, pointed the weapon at her. It is not necessary to again rehearse the testimony. We held that the act of pointing the loaded gun at the woman at the hour and place and under the circumstances shown by the testimony constituted an assault, and we have found nothing in the books or authorities which require us to change our views in that particular.

In the late case of State v. Archer decided by the court of appeals of Kansas, 54 Pac., 927, it was held that the pointing of an unloaded revolver, in a threatening manner, at another is an assault when the party at whom it is pointed is not aware that it is not loaded or has no reason to believe that it is not, and is by the act of the menacing party, put in fear of bodily harm. The court in support of its conclusion refers to State v. Taylor, 20 Kan., 643; 2 Bish. New Crim. L., Sec. 32; State v. Shepard, 10 Ia., 126; Com. v. White, 110 Mass., 409; and State v. Horne, 9 Kan., 119.

In the case at bar the woman was clearly put in fear of bodily harm, which impelled her to flee and call for assistance.

Counsel again insists that the evidence is insufficient to disclose an intent to murder. It may be that counsel understands our former opinion to disregard the principle of law that in cases of this character the specific intent

must be proven as laid in the indictment or information. If so, he misinterprets the reasons given for our conclusion. We are well aware and in full accord with that doctrine which is well expressed in the case of Roberts v. People, 19 Mich., 401, cited by counsel, as follows: "When a statute makes an offense to consist of an act combined with a particular intent, that intent is just as necessary to be proved as the act itself, and must be found by the jury as matter of fact before a conviction can be had." * * * "And in all such cases the particular intent charged must be proved to the satisfaction of the jury; and no intent in law, or mere legal presumption differing from the intent, in fact, can be allowed to supply the place of the latter."

That court, however, in the same case held further that it was unnecessary to prove the specific intent by direct, positive, and independent evidence; but as the court remarked by quoting from one of its own earlier decisions "the jury may draw the inference, as they draw all other inferences from any facts in evidence which, to their minds, fairly prove its existence," and then added, "and in considering the question they may and should take into consideration the nature of the defendant's acts constituting the assault; the temper or disposition of mind with which they were apparently performed, whether the instrument and means used were naturally adapted to produce death, his conduct and declarations, prior to, at the time, and after the assault, and all other circumstances calculated to throw light upon the intention with which the assault was made."

In Friederich v. People, 147 Ill., 310, the court said, "Malicious intent must therefore be proved. It is true that it need not be done by direct testimony and may under certain circumstances attending the act, be presumed, but not from the mere fact that a deadly weapon was used." And in People v. Landman, 103 Cal., 577, the court said, "Of course, under these circumstances, a person's intent can not be proven by direct and positive evidence, yet it

is none the less a question of fact, to be proven·like any other facts in the case, and all the circumstances surrounding the assault furnish the rule upon which its proper solution depends."

In our former opinion we called attention to several of the circumstances connected with the assault as well as the conduct of the defendant, and stated that the jury having upon all the testimony determined that the defendant was guilty of the crime charged, and that as there was sufficient evidence, if true, to establish the crime, we were not disposed to disturb the verdict. Although, as we then remarked, the evidence was not strong, we perceive no substantial reason for departing from our former conclusion. The jury had all the facts before them, and were instructed that to make out the crime both the assault and intent must be proved.

*Rehearing denied.*

CORN, J., concurs.

KNIGHT, J., did not sit.