Dean NORFOLK, Appellant (Defendant
below),

v.

STATE of Wyoming, Appellee (Plaintiff
below).

No. 2968.

Supreme Court of Wyoming.

April 4, 1961.

John P. Ilsley, Gillette, for appellant.

Norman B. Gray, Atty. Gen., and W. M. Haight, Deputy Atty. Gen., and Thomas Morgan, County and Pros. Atty. of Campbell County, Gillette, for appellee.

Before BLUME, C. J., and PARKER, HARNSBERGER and McINTYRE, JJ.

Mr. Chief Justice BLUME delivered the opinion of the court.

Dean Norfolk, the appellant herein, was convicted on November 12, 1959, of reckless driving in violation of § 31–125, W.S. 1957, which reads as follows: "Any person who drives any vehicle in willful or wanton disregard for the safety of persons or property is guilty of reckless driving." The case was tried to a jury. At the close of the testimony of the state, appellant moved for a directed verdict in his favor. This motion was denied. The appellant did not introduce any testimony. After the jury returned a verdict of guilty, the appellant made a motion for judgment in his favor notwithstanding the verdict of the jury. The motion was denied and the court rendered judgment imposing a fine upon the appellant. From that judgment the appellant has appealed to this court.

The evidence is substantially as follows: Highway 14–16 runs westerly and easterly but somewhat southeasterly along the north part of Gillette, Wyoming. First Street in Gillette runs along this highway, at least in part. Streets run east and west, avenues north and south. Third Street at Osborn Avenue is a little more than a block south of the foregoing highway. Two and a half blocks east of Osborn Avenue is State Highway 59, commonly called the Douglas Highway, which runs north and south.

At that place Third Street is about a block south from Highway 14–16. It joins Highway 14–16 about 600 feet west of Highway 59.

About 9:30 p. m. on May 16, 1959, Sheriff McGee and Highway Patrolman Thrasher were sitting in a highway patrol car on Highway 14–16. The sheriff and Thrasher saw a Ford station wagon, brown and cream colored, going east on the highway. Thinking that it was perhaps going too fast they alerted the policemen of Gillette to watch the station wagon. They followed the vehicle going east for several blocks. The station wagon turned south on Osborn Avenue and practically stopped. The sheriff and the highway patrolman followed but turned west at the next corner while the station wagon turned east on Third Street. Both witnesses testified that when they saw the station wagon in town it was not traveling with a reckless disregard to life and property.

Witnesses Fritzler and Sherard were police officers of Gillette. The former testified that the first time he saw the appellant was downtown in Gillette between seven and eight o'clock on the evening of May 16, 1959, "just driving around". Being alerted, both of the officers were out later to watch for the station wagon. They drove along Highway 14–16. They first "glimpsed" the station wagon when it was at the intersection of Third Street and Brooks Avenue, a block and a half west of Highway 59. According to Sherard the station wagon was going too fast for comfort. The officers next saw the station wagon at the intersection of Third Street and Highway 59. There was a stop sign at that place about 50 feet west from Highway 59. There was a machine shop practically at the corner of the intersection which obstructed the view of any traffic coming north on Highway 59 and one would have to get close to the highway to observe as to whether or not anyone was coming along the highway from the south. The driver of the station wagon ignored the stop sign. The highway at that place was somewhat higher than Third Street.

The driver of the station wagon just "jumped" across Highway 59. The police officers were then traveling about 60 miles per hour. The driver of appellant's car, driving east, got to the junction of Third Street and Highway 14–16 first. The police officers were then about 150 feet west from the junction. So the appellant's car apparently was being driven faster than 60 miles per hour. The police officers put on the red light but no attention was paid to it. The police officers in trying to catch up with the appellant's car increased the speed of their car to 90 miles per hour but were unable to catch up. They then called the highway patrolman who answered the call and he found the appellant at Wyodak about seven miles east of Gillette and caused the appellant to drive back to Gillette to the police station. The information filed in this case followed. In the appellant's station wagon were six companions, including two girls from Upton. Two cars were on the highway traveling westward while the appellant's station wagon was being driven. It, however, according to the testimony, kept on the right side of the highway.

■ 1. Counsel for appellant contends that the state failed to show who drove the station wagon to Wyodak and just before. It is true that there is no direct evidence on that point but, as heretofore stated, Police Officer Fritzler testified that he saw the appellant drive around town between seven and eight o'clock on the evening of May 16th. Appellant was driving the station wagon when found at Wyodak and when he arrived at the police station. The testimony shows that he was the owner of the station wagon. We think these facts and circumstances were sufficient to justify the jury in finding that he was the driver.

2. Counsel for appellant contends that the evidence is insufficient to show the appellant guilty of reckless driving beyond a reasonable doubt. In considering as to what the legislature meant by reckless driving, it is stated in People v. Nowell, 45 Cal. App.2d Supp. 811, 114 P.2d 81, 83, citing numerous cases:

"＊ ＊ ＊ 'Willful misconduct implies at least the intentional doing of something either with a knowledge that serious injury is a *probable* (as distinguished from a possible) result, or the intentional doing of an act with a wanton and reckless disregard of its *possible* result.' ＊ ＊ ＊" Howard v. Howard, 132 Cal.App. 124, 22 P.2d 279, 281.

See also 61 C.J.S. Motor Vehicles § 611 (1949). There can be no doubt that what appellant did in the case at bar was intentional, and in determining as to whether or not he was guilty of reckless driving within the meaning above mentioned the main facts to be considered in that connection are as follows: (1) Driving at 60 miles per hour or more while driving along Third Street in Gillette in a district which was apparently residential; (2) disregarding the stop sign at the intersection of Third Street and Highway 59, particularly because that intersection was a dangerous crossing on account of the obstruction by a building on the corner; (3) driving at a speed in excess of 90 miles per hour along the road from Gillette to Wyodak; (4) the fact that there were six occupants in the station wagon aside from the appellant so that if something had gone wrong with the car unfortunate consequences might have resulted; (5) the fact that there was traffic along the road; and (6) the fact that appellant drove the car at night along the road.

Reckless driving is condemned by the statute even though no actual injury to persons or property may result. State v. Nolan, 1 N.J.Super. 280, 64 A.2d 238. See also Annotation, 52 A.L.R.2d 1337, 1369, § 28. As stated in this connection by the court in People v. Nowell, supra, at 114 P.2d 83:

"＊ ＊ ＊ If, in order for a driver to be guilty of wilful misconduct he must have knowledge that his course of conduct will probably cause a catastrophe, then one may deliberately take a chance on an accident and yet not be said to drive recklessly, provided only that the odds are more than even that he will escape without a scratch. ＊ ＊ ＊"

Passing a stop sign does not necessarily constitute reckless driving. People v. Garo, 208 Misc. 496, 144 N.Y.S.2d 107. But when the stop sign is at a corner fraught with constant danger by reason of a driver not being able to see a car coming from another direction, then a different situation is presented, particularly when a driver with six passengers should consider the welfare of his passengers as well as his own.

The legislature of this state has considered what is and what is not safe driving. In Ch. 55, S. L. of Wyoming, 1959, it stated that a driver in residential districts should not exceed a speed of 30 miles an hour. A maximum speed even on four-lane divided highways is 70 miles per hour. It is true that it does not necessarily follow that exceeding the speed limit will constitute reckless driving within the meaning of our statute. There might, for instance, be an emergency. Again if a driver wants to pass another car which is being driven slowly, it may be necessary to exceed the speed limit for a short time in order not to endanger passengers in the car which is being passed. So, generally speaking, the facts and circumstances in a particular case should be considered in order to determine whether or not the statute has been violated. In Annotation, 52 A.L.R.2d 1337, 1361, it is stated:

"In the absence of a statute or ordinance denouncing as reckless driving the operation of a motor vehicle at an excessive or imprudent rate of speed, the mere speed at which a motor vehicle was operated does not alone determine whether it was operated recklessly, but is only a circumstance to be considered in connection with the surrounding circumstances in determining the question. ＊ ＊ ＊"

However, it has been held that in special cases excessive speed alone may show reck-

less driving. In Fisher v. Zimmerman, 23 Cal.App.2d 696, 73 P.2d 1243, 1246, the court stated:

"It is generally held that mere speed, of itself, does not constitute willful misconduct. This may not always be true. There may be a point at which the speed becomes so excessive, the danger of injury to the passenger so probable, that such extreme speed alone might be held to be willful misconduct. * * *"

See also Hall v. Mazzei, 14 Cal.App.2d 48, 57 P.2d 948. In People v. Nowell, supra, the trial court held the defendant guilty of reckless driving because he attained and maintained for some time a speed of 75 to 80 miles per hour. The conviction of reckless driving was upheld, the court stating in part at 114 P.2d 84:

"We conclude, therefore, that one may be found guilty of reckless driving if he drives so as to show a wanton and reckless disregard of the possible consequences to persons or property of his manner of driving, even though it may not be a fact, and so he may not know, that the probable result of his driving will be to injure a person or property. We conclude, further, that the rate of speed at which a car is driven may of itself be so great that injury to persons and property is a distinct possibility, and that in this case the trial court was warranted in determining that a speed varying between 75 and 85 miles per hour did endanger persons and property. * * * where, as in this case, a high rate of speed was attained and maintained, the trial court was justified in concluding that it was intentional, deliberate, and revealed that the driver pursued his course in a wanton and reckless disregard of the possible consequences."

In that case it does not appear that the defendant had any passengers. In the case at bar the appellant had six, calling for greater caution than if he had been alone. Furthermore, in connection with the speed of more than 90 miles per hour, we must consider the other facts heretofore mentioned. Taking all these facts into consideration, we cannot say that the verdict of the jury was incorrect. It is quite clear that counsel for appellant wants this court to usurp the function of a jury. We cannot do that. We can interfere only in cases when it is clear that there are no probative facts which would sustain the verdict of the jury. What is reckless driving depends on the facts and circumstances. A jury composed of twelve reasonable men and women is certainly just as able to judge that as is this court, if not more able. In 52 A.L.R.2d 1337, 1377 et seq., certain cases are set out in which the appellate courts reversed convictions for reckless driving. All of these cases are different from the case at bar. In 52 A.L.R.2d 1337, 1370, § 32, numerous cases are set out in which convictions for reckless driving were upheld. On page 1370 of the same volume is laid down this general rule:

"It is generally recognized that the question what constitutes reckless driving depends upon the particular circumstances and that the determination thereof is for the trier of fact whether it be the judge or a jury."

That is merely an application of the general rule recognized in criminal law. The appellate court passes on questions of law, the jury on questions of fact.

"* * * where there is evidence, the question of its sufficiency to support a verdict or finding is a question of fact and not of law, unless the evidence is free from conflict and admits of no adverse inferences." 24 C.J.S. Criminal Law § 1832, p. 671 (1941).

We think that we should lay down an unjustifiable precedent if we should say that, under facts such as shown in the case at bar, the jury were not warranted in finding that the appellant's driving was reckless. Furthermore, in the case at bar the trial court approved the verdict of the jury when it overruled a motion for a judgment

notwithstanding the verdict. It is said in 24 C.J.S. Criminal Law § 1886 (1941):

"The fact that the trial judge was satisfied with the verdict, and that he refused to set it aside or order a new trial, will be accorded great weight by the appellate court, as is shown, in § 1876 supra, by such court's reluctance to interfere with the trial court's disposition of a motion for a new trial. The appellate court hesitates to interfere with a verdict approved by the trial court, and, if authorized by the evidence, the verdict is regarded as conclusive and will not be disturbed. * * * When the trial court approves the verdict of the jury, the verdict comes to the appellate court, not on the proposition that the verdict is against the weight and credibility of the evidence, but on the proposition that it is contrary to the evidence; and it has been stated that for the appellate court to set aside a verdict approved by the trial court it must appear that on no hypothesis is there sufficient evidence to support the conviction."

■ 3. Counsel for appellate objects to Instruction No. 4 given by the court. The instruction given reads as follows:

"You are further instructed that one may be guilty of the offense of speed-ing and yet not be guilty of the crime of reckless driving; however, mere speed may be so excessive as to afford proof of the elements necessary to make out the more serious crime of reckless driving, in that it may show a wilful or wanton disregard for the safety of persons or property. When reference is made to the speed of an automobile, there is also involved, of necessity, the highway on which it travels, with its width, surface, and the presence or lack of traffic upon it, the factor of visibility, and whether the car was driven before or after dark, and when considered in relation to these matters, mere speed, without other acts, may demonstrate that the driving is reckless."

The instruction is almost, if not quite, in accordance with what we have heretofore said. It does not say that speed alone may show reckless driving, except when taken into consideration with the surrounding circumstances and especially when the speed is excessive. We do not think that the instruction misled the jury, and it is not, we think, cause for reversal of the case.

The judgment of the trial court is accordingly affirmed.

Affirmed.