Robert L. RHOADES, Petitioner,

v.

The STATE of Wyoming, Respondent.

No. 91–132.

Supreme Court of Wyoming.

July 3, 1991.

Daniel G. Blythe of Blythe & Lewis, Cheyenne, for petitioner.

Jon R. Forwood, Asst. Dist. Atty., for respondent.

Before URBIGKIT, C.J., and THOMAS, CARDINE, MACY and GOLDEN, JJ.

## ORDER DENYING PETITION FOR WRIT OF CERTIORARI

This case coming before the court upon the Petition for Writ of Certiorari filed herein on behalf of appellant on June 6, 1991, in Civil No. 20–367 in the District Court of the First Judicial District in and for Laramie County, Wyoming, and the court, having carefully considered the matter, finds there are insufficient grounds upon which to grant the Petition of Certiorari; it is therefore

ORDERED that the Petition For Writ of Certiorari be, and it hereby is, denied.

URBIGKIT, C.J., would have granted the petition, and files a dissent following the court's denial.

URBIGKIT, Chief Justice, dissenting.

I would grant certiorari to review this reckless driving conviction because serious question exists whether the charged offense was proved by any construction of the proof where a factual dispute as to what occurred does not actually exist.

The offense for which the reckless driving conviction was entered is found in W.S. 31–5–229:

Any person who drives any vehicle in willful or wanton disregard for the safety of persons or property is guilty of reckless driving.

The vehicle collision events are apparently accurately stated by petitioner to be:

On January 14, 1991, the defendant, Mr. Robert L. Rhoades, and his wife were employed as truck drivers. Mr. Rhoades was driving a[n] 18 wheeler. They were westbound on Interstate 80. This was their first trip through Wyoming. They stopped at Burns Brothers, east of Cheyenne, and when returning to the interstate missed a turn and ended up on the frontage road.

They realized that they were on the wrong road and that they would not be able to stop at the Port of Entry from the service road. They decided to turn onto County Road No. 137 and follow that road around until they could change direction and reaccess Interstate 80.

In the process of turning around, Mr. and Mrs. Rhoades discovered that County Road No. 137 was a "dead end" road and that they could not travel further north on the road. Realizing he was on a "dead end" road, Mr. Rhoades stopped his truck, parked it, got out, walked around and got back into the truck.

Mr. Rhoades looked for traffic and saw none. He directed his wife to look toward the east, to watch for oncoming traffic and he looked towards the west watching for traffic. Mr. Rhoades backed the truck onto the road in order to turn around.

All the running lights, marker lights and other required lights on the truck were in operating order and illuminated. The emergency flashers were flashing.

Both Mr. and Mrs. Rhoades were looking toward the west and east, respectively. They backed onto the frontage road to turn around. They were struck by a drunk driver.

Mr. and Mrs. Rhoades both had recently completed intensive training in truck driving and in backing a truck. Mrs. Rhoades had truck driving experience before this schooling, driving a truck with her former husband; and, Mr. Rhoades riding in a truck with his father.

As a result of their intensive training and as a result of their experience they gave unrefuted opinions as experts that they followed all standard customary procedures in the truck driving industry. According to custom, experience and training, the defendant and his wife backed correctly and in the proper manner. Mr. Rhoades did not exhibit a conscious disregard for the safety of others, and did not, according to standards of the industry, constitute a hazard to others. The whole procedure of turning around was conducted in a careful and safe manner.

The result was an accident.

In confirming conviction within a concept of *prima facie* guilt from backing across the highway to turn around on a dead end highway, the district court in appellate decision related:

Rhoades claims that the evidence was insufficient to support his conviction and that it should be set aside. Rhoades argues that at best the evidence shows negligence and cannot support a finding beyond a reasonabl[e] doubt that Rhoades was willful or reckless in a criminal sense.

The point at which conduct is transformed from negligence into criminal recklessness is not susceptible of clear definition. Arguably, the difference between negligence and criminal recklessness involves a difference in kind, not simply a difference of degree. Certainly the consequences differ in kind. Yet the differences between negligence and criminal recklessness are not so distinct such that the contours of both could be defined by a bright-line test. Nonetheless, the Wyoming Supreme Court has provided some guidance regarding the inquiry and proof necessary to sustain a reckless driving conviction.

First, the focus of the inquiry is on the defendant's manner of driving and not victim's. "Reckless driving is condemned by the statute even though no actual injury to persons or property may

result. (Citations omitted.)" *Norfolk v. State*, 360 P.2d 605 (Wyo.1961). This is not a case of vehicular homicide, but rather reckless driving. Thus, the result of the Rhoades' act of backing the truck across the service road is of no consequence for a conviction under the statute.

Rhoades presents to this Court a situation in which he found himself, through no fault of his own, in an impossible situation that left him no choice but to back his truck across the highway in order to change his direction of travel. Rhoades goes to great lengths to show that he used caution in undertaking this maneuver. He points out that he and his wife kept a keen lookout for approaching traffic; that he had engaged his emergency lights; and that he sounded his horn, warning of his action.

The Court agrees that such conduct is not consistent with a finding of criminal recklessness. However, that is not the issue. The issue is whether Rhoades acted recklessly when he elected to back his truck across the highway in order to turn it around.

The State argues that Rhoades acted recklessly when he elected to back his truck across the highway. In fact, the State goes so far as to suggest an alternative means by which Rhoades might have turned his truck around:

> The State contends the collision could easily have been avoided if [Rhoades] would have stopped his truck just west of the intersection with the dead end county road, and then back[ed] his trailer north onto this road where all vehicles approaching the intersection would be required to make a stop.

> \* \* \* \* \* \*

This contention is not consistent with evidence showing that when Rhoades turned onto County Road 137, he had no reason to know that it was a dead-end road. The evidence involving the turn onto the county road with no warning that it was a dead end cannot support a finding of recklessness. But the danger did not arise by virtue of Rhoades' deci-

sion to turn right onto the county road. Rather the decision to back the truck across the highway comprises the focus of inquiry.

Rhoades argues that after he turned onto County Road 137 to follow the road to turn around, he discovered that he was on a dead-end road, and was "stuck." \* \* \* This is consistent with the implication in the record that Rhoades had no choice, no alternative, but to proceed in the manner taken so as to turn his truck around. However, the trial court believed that other safety precautions may have been available, but refused to speculate about what those precautions could have been.

If no alternatives were available, then certainly Rhoades' criminal culpability is diminished. If alternatives were available, then Rhoades' culpability is enhanced. The record neither reveals any such alternatives, nor the absence of such alternatives. So the question becomes whether the State had the burden to demonstrate that alternatives were available. This inquiry leads to the dispositive question: What must the State prove to establish a *prima facie* case of reckless driving? The answer is provided in *State v. Rideout*, 450 P.2d 452, 454 (Wyo.1969) and *Wood v. City of Casper*, 683 P.2d 1147, 1149 (Wyo.1984), wherein the phrase, "willful or wanton disregard for the safety of persons or property" was defined:

> The pivotal words \* \* \* 'willful or wanton disregard for the safety of persons or property' were considered in *Norfolk v. State*, Wyo., 360 P.2d 605, 607, and it was observed that willful misconduct implies at least the intentional doing of something either with a knowledge that serious injury is a probable (as distinguished from a possible) result, or the intentional doing of an act with a wanton and reckless disregard of its possible result.

Based on the facts and circumstances, this Court concludes that backing a semi truck across the highway is *prima facie* evidence of reckless conduct. The State had no further obligation in its quantum

of proof; *i.e.*, to prove the existence of an alternative means to turn the truck around. This Court concludes that semi trucks cannot, without consequence, block a highway and thereby present a major hazard in order to minimize inconvenience to the driver.

I could, and probably would, find here a drunk driver who caused his own accident, but no evidence of the required reckless driving by the truck driver to justify this serious conviction. Certiorari would permit a more appropriate review of the case to assess whether any basis for the conviction properly exists and how reckless driving, *e.g.* "willful or wanton disregard for the safety of persons or property", could be extracted from the clearly necessary and overtly thoughtful action of this truck driver in what he did in conjunction with his wife's assistance.

I simply do not conclude that when we deal with a dead end road under these circumstances "that backing across a highway with a 55 mile per hour speed limit" is *prima facie* or preclusive evidence of the required conscious disregard where necessity exists to do something. No reasonably alternative method to get back onto the highway was available and the accident resulted from the driving conduct of a third-party drunken motorist. After review on certiorari, I might agree with the trial results but certainly nothing here charged to the petitioner reaches the character required to constitute the elements of this criminal offense, "willful and wanton disregard for the safety of persons or property."

I do not accept the conclusions of the district court, while sitting as an intermediate appellate court, that it always is to be found "that backing a semi truck across the highway is *prima facie* evidence of reckless conduct." Obviously, in some cases, it would be a high level of criminal behavior and, in others, ordinary, necessary, and usual non-negligent behavior. Here, leaving the truck sitting until daylight came might present a substantially greater hazard to oncoming drunken drivers. Obviously, in our space-confined society and the industrial use of large trucks, backing across a highway may be the only choice on occasion and frequently may not even be negligent let alone reckless driving conduct. We simply have here no discernable criteria for the application of *prima facie* evidence of guilt. *Cf. King v. State,* 718 P.2d 452 (Wyo.1986).

Usage of a *prima facie* presumption to accomplish a criminal conviction is seldom appropriate, *O'Neal v. State,* 498 P.2d 1232 (Wyo.1972); *State v. Pressler,* 16 Wyo. 214, 92 P. 806 (1907), and never, in my conception, when emergency driving activities might be required. Negligence and its more severe subcategory of recklessness encompassing "willful or wanton disregard" are issues of fact which should not be burdened by application of *prima facie* presumptions.[1] *Bryant v. Hornbuckle,* 728 P.2d 1132 (Wyo.1986); *Timmons v. Reed,* 569 P.2d 112 (Wyo.1977); *Bryant v. State,* 7 Wyo. 311, 51 P. 879 (1898), *reh'g denied* 7 Wyo. 311, 56 P. 596 (1899).

I would consider possible error to exist from application of presumption and resulting conviction from which this present appeal decision and factual references in the petition are, for present purposes, uncontroverted—that reckless driving exists without proven evidence of the more egregious character of conduct required to constitute willful or wanton disregard. Untaken alternatives constituting proof of the crime of the driving violation should constitute the burden of proof for conviction by the state and not an assumed basis for offense against the charged crime by the petitioner. Essentially what occurs here is that the petitioner driver is required to

---

1. Nothing presented in the present documentation reveals any conjunctive statutory violations which might arguably ratchet negligent conduct into reckless driving. *See Short v. Spring Creek Ranch, Inc.,* 731 P.2d 1195 (Wyo.1987). *Cf. Distad v. Cubin,* 633 P.2d 167 (Wyo.1981). See, for example, *Norfolk v. State,* 360 P.2d 605 (Wyo. 1961), where the conduct involved driving through a stop sign, crossing a state highway at a high speed without stopping and then speeding down a public highway at up to ninety miles per hour while being chased by law enforcement officers.

shoulder the burden of proving lack of not only willful and wanton misconduct, but also apparently even negligence. The burden of proof should remain with the prosecution. *Capwell v. State,* 686 P.2d 1148 (Wyo.1984). *See also King,* 718 P.2d 452. *Cf. Hines v. Sweeney,* 28 Wyo. 57, 201 P. 165, *reh'g denied* 28 Wyo. 57, 201 P. 1018 (1921).

The appellate court, in this case the district court, properly stated the appropriate test but then inappropriately applied its factors to these facts, *e.g.* " 'intentional doing of something either with a knowledge that serious injury is a probable (as distinguished from a possible) result, or the intentional doing of an act with a wanton and reckless disregard of its possible result.' " *Wood v. City of Casper,* 683 P.2d 1147, 1149 (Wyo.1984) (quoting *State v. Rideout,* 450 P.2d 452, 454 (Wyo.1969)).

In *Wood,* the conduct involved was intentional misconduct in traffic stream driving for the overt purpose of hassling other motorists. A kind of "chicken" driving was involved with the inevitable resulting accident.

In the case of *State v. Rideout,* 450 P.2d 452, 453 (Wyo.1969) quoting *State v. Park,* 17 Utah 2d 90, 404 P.2d 677, 678 (1965)), it was recognized:

> "The term 'reckless disregard of the safety of others' of course implies a much greater dereliction in hazarding the safety of others than ordinary negligence. * * * "

In *Rideout,* a directed verdict of acquittal was granted and subsequently affirmed on appeal when considered by a bill of exceptions filed by the state. The factual circumstances of *Rideout* were found insufficient to justify negligent homicide or the lesser included offense of reckless driving. The conduct consisted of continuing to drive while sleepy, resulting in running off the road which caused a passenger death in the resulting rollover accident. Converse-

ly, the offense in the basic Wyoming case of *Norfolk v. State,* 360 P.2d 605, (Wyo. 1961), *supra* note 1, was a case where wanton and reckless disregard was clearly present and particularly so since that driver also endangered the six passengers carried in the vehicle.

We are not confined in authority to the reckless driving criminal cases since the same criteria was presented in the gross negligence guest statute cases. *See Mitchell v. Walters,* 55 Wyo. 317, 100 P.2d 102 (1940), and more recently the numerous culpable negligence third-party worker's compensation recovery cases, *Brebaugh v. Hales,* 788 P.2d 1128 (Wyo.1990); *Stephenson v. Pacific Power & Light Co.,* 779 P.2d 1169 (Wyo.1989). Within these cases where consistently addressing willful and wanton disregard as the identical test of culpable negligence, general ingredient of gross negligence and here reckless driving, this court has never previously applied any kind of presumption or abandoned an issue of fact determinate for a decision. *See Boehm v. Cody Country Chamber of Commerce,* 748 P.2d 704 (Wyo.1987) and *Bryant,* 728 P.2d at 1136.

It would appear, at least at this juncture, for writ of certiorari review, that rejection of the *prima facie* presumption determinate for reckless driving action removes any realistic evidentiary basis for the conviction entered. This really appears to be a conviction based upon an assumed presumption. I would grant certiorari to secure the record and require the litigants to more adequately advise the membership of this court, by briefs, why this conduct should constitute willful and wanton misconduct where the petitioner answered necessity with thought and care and then was hit by a drunken driver. *Dallason v. Buckmeier,* 74 Wyo. 125, 284 P.2d 386 (1955). *Cf. Timmons,* 569 P.2d 112.

Additionally, in considering the history of Wyoming law,[2] where until only recently a right of appeal always existed, I believe

---

**2.** Since before statehood of Wyoming in 1890, all final decisions of the district courts as the tribunals of general jurisdiction, including appeals from justices of the peace and municipal courts, were subject to a preclusive right of appeal to the Wyoming Supreme Court. That historical privilege was eliminated upon request by this court by legislative enactment of the optional certiorari process found in Wyo. Sess.Law ch. 132 § 1 (1987), W.S. 5–2–119, and

emphatically this court should not now take a confined and restricted attitude towards appellate review through a course of casual denial of petitions for writ of certiorari. The essential bargain that was made with the legislature in obtaining the elimination of the mandatory right of appeal should not now be reconstituted into an impermeable obstacle to this court's assistance considering our short history to build a firm and thoughtful structure for future Wyoming law. In my opinion, societal benefit and state law development justify, and perhaps require, a liberal attitude for granting appellate review by this court.

Within this appellate review request, I perceive potentially not only a singular injustice, but also a significant issue of general application presented which deserves our finite consideration by appellate review.

Consequently, I dissent.

the *succeeding adoption of a certiorari* rule by this court immediately thereafter, W.R.A.P. 13, which became effective October 20, 1987. Then for the first time in the history of this state, the previously provided right of appeal was re-placed by the permissive grant of review by the petition for writ of certiorari.