CARTER v. TERRITORY.

(June 14, 1888.)

JURY IN CAPITAL CASES — CHALLENGES—MODE OF
TRYING—SPECIAL VENIRE —COMPETENCY OF JU-
RORS.

1. Rev. St. § 3395, provides that, when the
panel of the grand or petit jury is for any reason
incomplete, names shall be drawn from the jury
box to complete it, and, if there are not sufficient
names in the jury box for this purpose, the court
may order the county clerk, together with the
probate judge or a justice of the peace, to pre-
pare a list of names to be placed in the box.
Section 3396 provides that, when a jury case is
called for trial, the clerk shall place in a box,
called the "petit jury box," the names of the 24
petit jurors, and shall draw therefrom till the

jury is formed, and, if such names become ex-
hausted, he shall then draw from the jury box.
*Held*, that the fact that, by following the pro-
cedure of section 3396, the names in the "petit
jury box" and in the "jury box" were both ex-
hausted before a trial jury was completed, did
not render the panel incomplete, so as to make
applicable the procedure set forth in section 3395
for obtaining further names to be placed in the
jury box; and that in such a case, there being no
proceeding of a different character provided by
statute, the court had inherent power to issue an
open *venire* to obtain the requisite number of
qualified persons to complete the jury.

2. Rev. St. § 3281, providing that in capital
cases three triers, with the qualifications of ju-
rors, shall be appointed by the court, who shall
be the sole judges of the fact whether the juror
stands impartial between the defendant and the
people, is not void as an infringement by the
legislature upon the prerogative and duty of the
court, as defined by the organic law of the terri-
tory, as such triers are merely a part of the ma-
chinery of the court, and can properly be pre-
scribed by the legislature, under its power to
regulate the mode of procedure in courts of jus-
tice.

3. There is no error in overruling the chal-
lenge by defendant of a juror for cause, when de-
fendant did not exhaust his peremptory chal-
lenges.

4. Under Rev. St. § 3283, providing that in
the trial of criminal cases it shall not be cause
for challenge that a person called to act as juror
has formed or expressed an opinion as to the
guilt or innocence of the accused from news-
paper reports or rumor only, provided he swear
that he can impartially try the case according to
the law and the evidence, notwithstanding such
opinion, the fact that such juror states that it
will require proof to change his opinion is not
cause for disqualification.[1]

5. The finding of the trial court or of the
triers of challenges as to the competency of a
juror will be set aside only for manifest error.

Error to district court, Carbon county.

Benjamin F. Carter was convicted of
murder in the first degree, and brings
error. Affirmed.

MAGINNIS, C. J. Benjamin F. Carter,
plaintiff in error, was indicted by the
grand jury of Carbon county for the crime
of murder in the first degree. He was
tried at the May term, 1887, found guilty,
and was sentenced to be hung July 8, 1887.
Upon motion of defendant below, execu-
tion of the sentence was suspended until
the first day of the next term of the court;
and at the January term, 1888, of this
court a writ of error was granted stay-
ing the execution of the sentence until the

————————

[1] As to effect of a juror forming or expressing
an opinion, see Black v. Territory, post, 313, 22
Pac. Rep. 1090, and note.

matter should be heard and determined by this court. Counsel for the plaintiff in error presents only three alleged errors to this court; all of them arising out of the formation of the jury which tried Carter. The first is that, having exhausted the petit jury box and the general jury box (the one containing the 200 names) before completing the trial jury, the court thereupon, over the objection of the defendant below, issued an open *venire*, and completed the jury from the persons summoned under such *venire*. This contention is based upon the provisions of section 3395, Rev. St. Wyo. It seems to be conceded that, if there is no statutory direction as to the mode of procedure which the court shall adopt for the purpose of completing a trial jury after the exhaustion of the regular jury boxes, then the court may properly resort to an open *venire* for that purpose. But, conceded or not, we do not regard this as an open question since the ruling of the supreme court in the case of Clawson v. U. S., 114 U. S. 477, 5 Sup. Ct. Rep. 949. Upon this proposition, therefore, it only remains for us to examine as to whether any way is pointed out by statute in which to proceed in the event of the petit and regular jury boxes becoming exhausted before the completion of a jury for the trial of any cause. Section 3379, Rev. St. Wyo., provides that, 30 days before each term of court, the county commissioners shall select 200 persons possessing the qualifications of electors. Section 3382 requires the county clerk to place the names of such persons in a jury box. Section 3383 requires the county clerk, 15 days before a term of court, to draw from such jury box 16 names of persons to act as such grand jurors and 24 names to serve as petit jurors. The succeeding sections, up to 3395, provide for the method of drawing the names and summoning the persons drawn. Section 3395 is entitled, "Method of completing panels;" and provides: "When, from any cause, there is no panel of grand or petit jurors, or such panels, or either of them, are for any reason incomplete," names shall be drawn from the jury box to complete such panel or panels; "but in case the names in such jury box be exhausted before such panel or panels is or are complete, or if, for any cause, there are no names in such jury box, the court may order the county clerk, together with the probate judge or a justice of the peace, to prepare another list,

which names shall be put in the jury box." It will be noticed that the provisions of this section apply only when the panel or panels of the grand and petit jury are incomplete; and, under this section, the courts of the territory have failed to replace in the jury box any names drawn for the purpose of filling either of these panels. In this way, such box may become exhausted, and no names remain therein. No reference has thus far been made to the method of obtaining a trial jury. Section 3396 is entitled, "Manner of forming jury for trial," and provides that, when a jury case is called for trial, the clerk of the court shall place in a box called the "petit jury box," the names of the 24 petit jurors. He shall then draw from the same until the jury is formed. If such names become exhausted, then he shall draw from the jury box. No further method is prescribed for obtaining a jury. And it was after all this had been done, and all the names had been drawn from the jury box, that the court below resorted to the open *venire* complained of. It seems a self-evident proposition that this proceeding had in no way rendered incomplete the panel of the petit jury; but, as if the legislature anticipated the contention made here, it added two provisos to section 3396; one that, after the jury is completed, all the names drawn should be returned to the regular jury box,—thus, as we take it, treating such box as not exhausted; the other that "all the members of the panel of the petit jury who are not actually engaged in the trial of the case shall be excluded from the court room during the trial of such case." Evidently, it was not contemplated that any proceeding in any particular jury case should render incomplete the petit jury panel. The petit jury panel being complete, section 3395 cannot apply; and no provision being made for a case where all the names should be drawn from the regular jury box before a trial jury was completed, this case falls directly within the rule laid down by the United States supreme court in Clawson v. U. S., 114 U. S. 477, 5 Sup. Ct. Rep. 949, and stated in U. S. v. Clawson, 4 Utah, 34, 5 Pac. Rep. 689, by the supreme court of Utah: "When the district court is unable to obtain a trial jury according to the act of congress of June 23, 1874, by reason of the exhaustion of the jury list, it has implied power to issue a *venire* to obtain the requisite number to complete the jury. Such power is in-

cident to the authority to hold its court and to try jury cases."

The second contention of plaintiff in error is based upon section 3281, Rev. St. Wyo., which provides: "In capital cases, three triers, with the qualifications of jurors, shall be appointed by the court, who shall be the sole judges of the fact whether the juror stands impartial between the defendant and the people, and such triers shall examine the persons presented as sworn upon oath, and may receive other evidence, if necessary, to aid them in arriving at a proper conclusion as to such juror's competency." It is contended that this section is an infringement by the legislature upon the prerogative and duty of the court, as defined by the organic law of the territory. We do not so consider it. Triers are merely a part of the machinery of the court, and can properly be regulated and prescribed by the legislature under its power to regulate the mode of procedure in courts of justice. Their province is merely to pass upon questions of fact incidental to challenges to the favor. They were an established feature of the common law; and although, at the present day, such practice is gradually being abolished, still the fact they are required to pass upon was never considered as necessarily and peculiarly a proper subject for the consideration of the court. It was argued at great length by the learned counsel that defendant below was deprived of a substantive right, because such statute does not permit of an appeal from the triers of challenges. Whether such an appeal would be entertained or not is a question not presented by the record in this case, as only in one case was such an appeal attempted to be taken, and then the court entertained the appeal, and sustained the decision of the triers; and, clearly, the triers had decided properly.

The third error, or rather class of errors, is supposed to arise in the action of the court below in permitting disqualified jurymen to sit. The record does not present this question properly. The defendant was allowed by the statute twelve peremptory challenges, and the prosecution six. The record discloses only three excused,—all by the defendant. These three are: Lewis, excused by defendant; Herman, excused by defendant; and Willis, excused by defendant. The law is well stated in the case of State v. Elliott,

45 Iowa, 486: "An erroneous overruling of a challenge for cause is not reversible error unless the prisoner exhausted his peremptory challenges, and is thus prevented from getting rid of the obnoxious juror by a peremptory challenge." See, also, State v. Davis, 41 Iowa, 311. It is to be presumed that, if defendant below had desired to be rid of the jurors whom he challenged, he could have done so by means of his remaining peremptory challenges, and, failing to do so, that he had waived whatever disqualification existed. If they had been excused peremptorily, it would only have been at the expense of peremptory challenges, which, according to the record, defendant did not deem of sufficient importance to use, and it is upon that account that this court will not review the action of the court below upon a challenge for cause, where the person challenged is afterwards peremptorily excused by the defendant, and all of his peremptory challenges are not exercised. Mimms v. State, 16 Ohio St. 221; Erwin v. State, 29 Ohio St. 186; People v. Peatrusky, 2 N. Y. Crim. Rep. 450. This condition of the record is sufficient, it seems to us, to dispose of the case.

But counsel for plaintiff in error in their argument insist that in this particular the record is wrong. Notwithstanding the fact that it is their bill of exceptions, certified below as true, they now attempt to contradict and impeach it. The gravest considerations prevent us from consideration of such a proposition. As this, however, is a capital case, we have examined the challenges for cause, and find that they all rest upon answers given by different persons summoned, to the effect that they had formed opinions from reading newspaper accounts of the transaction, or from reports circulated in the community, and that they could disregard such opinions in the trial of the case, and render an impartial verdict; falling within the purview of section 3283, Rev. St. Wyo. These persons were examined thoroughly by the attorneys and the triers, and found impartial by the triers. We see no good reason why this court should disregard such finding, and declare such persons partial. It is true, they all said that it would require evidence to remove such opinions; but we do not consider this as in any way contradicting their statements that they could render an impartial verdict. The second statement follows as

a corollary of the first. If one has an opinion, speaking in the abstract, undoubtedly it would require evidence to remove it. Chief Justice WAITE, in Reynolds v. U. S., 98 U. S. 145, referring to the examination of a juryman presenting fully as well-established an opinion as any of those complained of in this case, says: "The theory of the law is that a juror who has formed an opinion cannot be impartial. Every opinion which he may entertain need not necessarily have that effect. In these days of newspaper enterprise and universal education, every case of public interest is, almost as a matter of necessity, brought to the attention of all the intelligent people in the vicinity, and scarcely any one can be found among those best fitted for jurors who has not read or heard of it, and who has not some impression or some opinion in respect to its merits. It is clear, therefore, that, upon the trial of the issue of fact raised by a challenge for such cause, the court will practically be called upon to determine whether the nature and strength of the opinion formed are such as in law would necessarily raise the presumption of partiality. The question thus presented is one of mixed law and fact, and to be tried, as far as the facts are concerned, like any other issue of that character, upon the evidence. The finding of the trial court upon that issue ought not to be set aside by a reviewing court unless the error is manifest. No less stringent rules should be applied by the reviewing court in such case than those which govern in the consideration of motions for new trial because the verdict is against the evidence. It must be made to clearly appear that upon the evidence the court ought to have found the juror had formed such an opinion that he could not in law be deemed impartial. The case must be one in which it is manifest the law left nothing to the conscience or discretion of the court." See, also, Serviss v. Stockstill, 30 Ohio St. 418.

After an examination of the record, we cannot find that the court below, or the triers, erred in their finding in overruling challenges to jurors. It follows that, even were this court at liberty to look behind the record in this case, we can find no such abuse of discretion as would warrant us in finding error in the action of the lower court, for the purpose of contradicting it. There is no error shown sufficient to reverse the judgment of the court below. The judgment of the court below will therefore be affirmed.

CORN and SAUFLEY, JJ., concur.

### ON REHEARING.

#### (September 21, 1888.)

SAUFLEY, J. The only question presented for the consideration of the court, on the petition for a rehearing, is that which is raised upon the action of the court below in ordering an open *venire*, after having exhausted the petit jury box and the general jury box. In the former opinion of this court, rendered on the 14th day of June, 1888, this question is discussed and decided. After a careful consideration of the argument of counsel for the accused, we perceive no reason why that opinion should be disturbed. The view of the law therein expressed seems to us to be correct, and accordingly the petition for a rehearing is overruled.