[No. 8553.   Department Two.   April 28, 1910.]

WILLIAM W. CATHEY, *Respondent*, v. SEATTLE ELECTRIC COMPANY, *Appellant*.[1]

STREET RAILWAYS—COLLISION WITH VEHICLE—NEGLIGENCE—QUESTION FOR JURY. The negligence of a motorman on a street car in failing to avoid a collision with an ice wagon is for the jury, where it appears that the horses became frightened and could not be kept from crowding onto the car track while the street car was a block away, that the motorman could have observed the team, brought his car under control, and avoided the injury, and the driver of the team, an experienced man, did all he could to avoid it.

JURORS—SELECTION—STATUTES—COURTS—COMMON LAW POWERS. Jurors selected in May, 1909, to serve during the next month, under the law in force at the time of their selection, may serve during such June term, although by the act of 1909, taking effect June 8, the former laws were repealed and a new method provided for selecting jurors for each ensuing month, leaving no law in force for the selection of jurors in June, 1909, in view of the constitutional authority of the superior courts and their common law power to provide juries.

NEGLIGENCE—IMPUTED NEGLIGENCE—DRIVER OF VEHICLE. In an action for injuries received by one riding with the driver of an ice wagon, in collision with a street car, it is proper to instruct that the plaintiff may recover notwithstanding negligence on the part of the driver of the team, if the plaintiff did not cause and was not responsible for such negligence, had no control over the driver, and was not guilty of negligence himself.

Appeal from a judgment of the superior court for King county, Tallman, J., entered September 13, 1909, upon the verdict of a jury rendered in favor of the plaintiff, for injuries sustained in the collision of an ice wagon and a street car.   Affirmed.

*James B. Howe* and *Hugh A. Tait*, for appellant.

*Milo A. Root*, for respondent.

PARKER, J.—This is an action to recover damages for personal injuries, alleged to have resulted to the plaintiff from

[1]Reported in 108 Pac. 443.

the negligent operation of one of the street cars of the defendant.  The defendant operates a double track electric street railway upon First avenue, in Seattle.  First avenue runs approximately north and south.  Battery street intersects First avenue at right angles.  Bell street also intersects First avenue at right angles one block south of Battery street.  The plaintiff was injured by a collision between a street car of the defendant and an ice wagon on which plaintiff was riding, at a point on First avenue about half way between Battery and Bell streets.

On May 2, 1907, plaintiff and one Hans Rounstad were employed by the Standard Ice Company and were delivering ice.  In the course of their duties they were proceeding north on the east side of First avenue.  Rounstad was driving, being seated on the right, while plaintiff was seated on the left, both in the driver's seat.  As they passed Bell street the off horse became much frightened at a furniture van, and started to rear and jump and to crowd the other horse to the left towards the car tracks.  At this time one of defendant's cars was proceeding south on First avenue on the west car track, near Battery street.  There was nothing to obstruct the view between the car and the wagon, which were then approximately a block apart and approaching each other.  The horses continued to rear and crowd towards and upon the car tracks, the driver trying to pull them back upon the east side of the tracks so as to miss the approaching car, but upon the nearer approach of the car the driver, believing that it would be safer and more likely to avoid a collision with the car, pulled the horses to the left across the track on which the car was approaching, hoping to miss the car by passing it on the west side of the street.  The horses and the front part of the wagon passed over the track, but the car struck the right rear wheel of the wagon, throwing it over, the plaintiff falling with one of his legs under it, causing the injuries for which he claims damages.

The negligence charged against the defendant is that its motorman in charge of the car "needlessly and recklessly permitted his car to run against said wagon which he could plainly see and which he could easily have avoided by the exercise of ordinary care and prudence." The defendant denied all negligence on its part and that of its motorman, and alleged that the injuries sustained by plaintiff were caused by his own carelessness and negligence which contributed thereto, and were the approximate cause thereof. A trial before the court and a jury resulted in a verdict in favor of the plaintiff. The defendant moved for judgment notwithstanding the verdict, and also for a new trial. These motions being denied, judgment was entered upon the verdict, and the defendant has appealed.

We will first notice appellant's contentions upon its motions for judgment and for new trial, in so far as they challenge the sufficiency of the evidence to sustain the verdict. There was evidence tending to show that the horses, by reason of their fright, especially the fright of the off horse, became uncontrollable so far as the driver being able to keep them on the east side of and off the track of the approaching car; that their frightened condition and the driver's efforts to control them and their tendency to go upon the track that the car was approaching upon could be plainly observed by a person situated as the motorman was upon the front platform of the car, from the time they were nearly a block away from the car until the collision actually occurred; that if the car had been stopped at a very short distance north of where the collision occurred, the rear end of the wagon would have passed over the track and cleared the car without collision; that the motorman could have stopped the car sooner than he did, after seeing the probability of the accident, and avoided the collision, especially if he had the car under proper control; that the driver of the horses was a strong man and an experienced driver, and that he did all that an experienced driver could do to avoid the collision,

and that respondent did nothing, and could do nothing, to avoid the collision. There being evidence tending to show these facts, we think the cause was properly submitted to the jury.

It is contended that the trial court erred in denying the appellant's challenge to the panel of jurors. The challenge was based upon the ground that the jurors were not selected in accordance with chapter 73, p. 131, Laws 1909 [Rem. & Bal. Code, § 103 *et seq.*], but were selected under chapter 146, p. 270, Laws of 1905, as amended by chapter 63, p. 102, Laws of 1907. By the Laws of 1905 and 1907 it was the duty of the superior court to appoint jury commissioners in each county in June of each year. It was the duty of these commissioners to select the names of all qualified jurors in their county and deposit their names, written on separate slips of paper, in a box to be delivered to, and remain in the custody of, the clerk of the court. On the second Saturday of each month it was the duty of the jury commissioners and the clerk to assemble in open court and draw such number of names from the box as the judge might direct for petit jurors to serve during the ensuing calendar month.

This trial occurred on June 24, 1909. The jurors then in attendance upon the court had been regularly selected on the second Saturday in May, 1909, under the Laws of 1905 and 1907 as above briefly outlined. At the time of so selecting the jurors for service during the month of June, that law was in force. At the session of 1909, the legislature enacted a new law for the selection of jurors, being chapter 73, p. 131, Laws 1909 [Rem. & Bal. Code, § 94 *et seq.*]. This law went into force June 8, 1909, as all laws of that session did not having an emergency clause. By this law it is made the duty of the superior courts to divide their respective counties into not less than three nor more than six jury districts, each with equal population as near as may be. It is made the duty of the clerk of the court, during the month of July in each year, to make up a jury list containing

the names of all qualified jurors in each district, to provide boxes for each district, write the names of the jurors upon slips of paper, and deposit the names in the boxes of the proper districts. From these boxes the jury is to be drawn from month to month in a similar manner as under the previous law, except the drawing is done by the clerk of the court without the aid of jury commissioners, and the names are to be drawn in equal numbers from each jury box. The jurors so drawn are to serve for the ensuing month. We have then this situation. The jurors attending upon the court at the time of this trial were regularly selected for service for June, 1909, under a law that was in force on the second Saturday of May, the time of their selection, but was not in force at the time of the trial, because the new law of 1909 had the effect of repealing the prior laws when it went into force on June 8, 1909. *State ex rel. Gibson v. Gilliam,* 56 Wash. 29, 104 Pac. 1131. There could be no jury list made up by the clerk of the court under the law of 1909 from which a jury could be drawn to serve during June, 1909, since the first selection of jurors under that law could not occur until July, 1909, so there was no statute law in force during the month of June, 1909, that provided any method whatever for the selection of jurors to attend upon the superior courts of the state during that month.

The argument of learned counsel for appellant is in substance that the superior courts of the state were without power to proceed with jury trials at this time because of this want of statutory law providing for the selection of jurors. The superior courts are created by the state constitution. They possess general original jurisdiction, both in law and equity. Section 6, article 4, of the constitution, wherein their jurisdiction and powers are defined, among other things provides that, "They shall always be open, except on nonjudicial days," and by section 21, art. 1, of the constitution, it is provided that "The right of trial by jury shall remain inviolate." Clearly, the constitution contemplates that the superior

courts of the state shall at all times, except upon nonjudicial days, have power to proceed with their business, and this, of course, includes trial by jury as well as their other business. These are powers which cannot be taken away from the superior courts by anything less than a change in the constitution, unless it can be held that the absence of a statutory method for selecting jurors has the effect of depriving the superior courts of power to procure jurors for the conduct of its jury business. For nearly fifty years the statute law of this state and territory has provided as follows:

"The common law, so far as it is not inconsistent with the constitution and laws of the United States, or of the state of Washington, nor incompatible with the institutions and condition of society in this state, shall be the rule of decision in all the courts of this state." Rem. & Bal. Code, § 143.

In view of the common law source of our jurisprudence, it is more than likely that this would be the rule of decision in this state even in the absence of such a statutory provision. The power of procuring the attendance of jurors upon courts at common law was ample for that purpose before there were any statutes regulating the matter, both in England and America; and the authorities seem to clearly support the view that, in the absence of statutory provisions, the common law method of procuring jurors, that is, by open venire directed to the executive officer of the court, may be resorted to at the present time. 12 Ency. Plead. & Prac., 274; 24 Cyc. 208; 3 Blackstone, 352; *Clawson v. United States*, 114 U. S. 477, 486; *United States v. Beebe*, 2 Smith (Dak.) 292, 11 N. W. 505; *Carter v. Territory*, 3 Wyo. 193, 18 Pac. 750, 19 Pac. 443; *Berry v. United States*, 2 Colo. 186, 197.

In the case last cited, Chief Justice Hallet in discussing the power of the court to summon jurors in the absence of statutory provisions, at page 198, said:

"It will not be claimed that the powers possessed by courts are entirely derived from the written or statute law. As is well said in a late edition of a standard work, courts did not originate in constitutions. They were known to the common

law, and their powers are there well defined. If courts possessed only such powers as are granted in constitutions and statutes, they could not protect themselves from insult and outrage; they could not compel the attendance of witnesses, or obligations to testify when present; they could not compel the attendance of jurors, nor punish them for improper conduct. Potter's Dwarris on Statutes, 340. In our own law, not only the method of proceedings, but the remedies given to suitors are defined almost entirely by the common law. Of late the judicial power has been regulated by statute more fully than ever before, and still very much of it rests in the common law. That authority is not conferred by statute, is no evidence that it does not exist, for the common law continually supplements the statute law supporting it at every point, and providing for all its deficiencies.

"Of this, the law relating to juries is a good illustration, for, although the qualifications and selection of jurors are now usually regulated by statute, the process for bringing them into court is given by the common law, and their powers and duties are derived almost entirely from the same source."

We have noticed this common law power for the purpose of showing that it exists, and conclude that the superior courts of the state were not prevented from lawfully proceeding with jury trials during the month of June, 1909, simply because there was then no statute law in force providing for the manner of selecting and summoning jurors for service during that month. It is true the jurors in attendance upon the court at the time of this trial were not summoned by common law process, but they were then in attendance upon the court in pursuance of a lawful statutory method which was in force at the time of their selection and coming into court; and no other statutory method was then in existence by which jurors could be selected for service at that time. We are of the opinion that the court could lawfully proceed to trial with the jurors then present, or if there had been no such jurors present, it could have summoned a sufficient number to transact the jury business of the court by open venire as at common law. Appellant's

right to challenge individual jurors, either peremptory or for cause, was not impaired in the least by the manner of selecting or summoning the jury, and this record fails to show the exercise of any such challenge by appellant.

Among other things, the court instructed the jury as follows:

"A person riding in a wagon with another person who is driving a team which is hauling said wagon is not responsible for the negligence of such driver in a case of this kind, unless he caused said driver to be negligent and unless plaintiff's negligence concurs with the negligence of the driver.

"In this case, if you believe that the driver of the ice wagon was negligent, but that plaintiff did not cause such negligence and was not responsible therefor and was not guilty of negligence on his part, then it would be no defense to plaintiff's right to recover against defendant."

This instruction is claimed to be erroneous and prejudicial to appellant, in that it is too general and ignores the relation existing between respondent and the driver. It is argued by counsel for appellant that the negligence of the driver, if any, should be imputed to the respondent by reason of their relation at the time of the accident. There was no evidence tending to show that it was any part of respondent's duty to drive the team, or that he had any supervision or control over the driver. This being true, we think the instruction was not erroneous as applied to the facts of this case. In the case of *Shearer v. Buckley*, 31 Wash. 370, 378, 72 Pac. 76, an instruction was approved by this court upon the same principle which we think will sustain this instruction, the only difference between that case and this being that the injured person in that case was riding in a wagon as the guest or companion of the driver of the horses. But, as in this case, he had no authority or control over the person driving, or the team, and that fact appears to be the principal reason assigned by the court for exempting the injured person from the effect of the negligence of the driver. In addition to the cases there cited, the case of *McBride v.*

*Des Moines City R. Co.*, 134 Iowa 398, 109 N. W. 618, and cases therein cited, lends support to this view.

Other errors are assigned upon the rulings of the court in connection with the examination of witnesses. These we have examined and regard them all without merit. They all relate to matters within the discretion of the trial court. They are not such that we feel called upon to discuss them in detail. We find no prejudicial error in the record, and the judgment is therefore affirmed.

RUDKIN, C. J., CROW, DUNBAR, and MOUNT, JJ., concur.