[No. 19327. Department One.   December 7, 1925.]

EARL MARTIN, *Appellant,* v. PUGET SOUND ELECTRIC RAILWAY, *Respondent.*[1]

HIGHWAYS (52, 57)—USE OF HIGHWAY—NEGLIGENT USE OF MOTOR VEHICLES—EVIDENCE OF NEGLIGENCE. The driver of an auto stage was not guilty of negligence in not noticing a truck, stopped on a curve, in time to avoid a collision, where the night was dark, the truck was partly across, and on the wrong side of the highway, the red light on the back end of timbers on the truck being on the left side of the road and indicated room to pass on the right.

SAME (53-1)—USE OF HIGHWAY—CONTRIBUTORY NEGLIGENCE. The driver of a truck was guilty of contributory negligence, precluding any recovery by his assistant, struck by a stage, where it appears that he was transporting heavy timbers on a dark night, and continued after his lights went out, until he stopped on a curve partly across and on the left side of the road, blocking the highway and killing his engine, and his assistant was struck by the stage after getting down to crank the engine; common prudence requiring him to stop to remedy his lights when he had an opportunity to do so.

NEGLIGENCE (23)—IMPUTED NEGLIGENCE—NEGLIGENCE OF DRIVER IMPUTABLE TO OCCUPANT. The negligence of the driver of a truck transporting timbers, is imputed to his co-employee riding with him.

Appeal from a judgment of the superior court for Thurston county, Wilson, J., entered December 2, 1924, in favor of the defendant, notwithstanding the verdict of a jury for the plaintiff, in an action for personal injuries sustained in an automobile collision. Affirmed.

*Vance & Christensen,* for appellant.

*Poe, Falknor, Falknor & Emory* and *Troy & Yantis,* for respondent.

FULLERTON, J.—The appellant, Earl Martin, was injured, while upon the Pacific highway, by a passenger stage operated by the respondent, Puget Sound Electric Railway. He instituted the present action to recover

[1]Reported in 241 Pac. 360.

for his injuries, and on a trial in the court below before a jury a verdict was returned in his favor. On motion, the trial court entered a judgment for the respondent notwithstanding the verdict. The appeal is from the judgment so entered.

The salient facts are not in serious dispute. The appellant and one Abner Ames were in the employment of the Dawley Construction Company and, at the time of the accident, were engaged in transporting, by means of a motor truck, two timbers from the city of Tacoma to the city of Olympia. The timbers were ten inches by twelve inches in size, and were of considerable length, extending, when loaded on the truck, from some four feet beyond its front to twelve or fifteen feet in its rear. The timbers were placed one on each side of the truck. Martin and his co-employees left the city of Tacoma at about four o'clock in the afternoon of December 27, 1923. A lighted lantern showing a red light was hung on the back end of the timber on the left side of the truck before leaving Tacoma, and the lights of the truck were also turned on. As they proceeded on the way, the truck lights began to grow dim—so much so that the driver of the truck, on reaching a road station some six miles from the scene of the injury, stopped the truck and examined the light bulbs to ascertain whether they were properly fastened in their sockets. As the truck proceeded on its way, the lights continued dim, going out entirely as the truck reached a bridge forming the overhead railway crossing near Nisqually station. It was then something after six o'clock, darkness had set in, and it was raining. The driver of the truck, however, continued on his way for a distance of some eight hundred feet, when an approaching automobile was met whose lights so blinded the driver that he was compelled to stop. In stopping the engine died, and the appellant

Martin, who was riding beside the driver, got out, went to the front of the truck and started the engine by cranking it. As he returned to the side of the truck and was proceeding to climb into it, a stage of the respondent passed to the right of the truck so close as to strike the appellant.

The place of the accident was on a curve in the highway which turned to the left, when measured by the direction the automobiles were headed. The paved portion of the highway was, at that place, seventeen feet in width. It was on the side of a hill and had a downward slope of two and one-half feet to each hundred feet in distance. To the right of the pavement, was a railing varying in distance therefrom, according to the measurements of the civil engineers testifying, from two feet to two feet six inches. The driver of the stage testifies that, as he approached the truck, he was driving on the extreme right of the pavement, traveling between twenty-five and twenty-seven miles per hour; that the lights of the stage, owing to the curve, did not light up the highway for its full width; and that, as he approached, the only thing visible about the truck was the red light. He testifies that he saw the lantern first when some one hundred and fifty feet away, and that then it appeared to be still; that it was on the extreme left of the highway, indicating to him that the clearance way was to the right; that he did not discover the truck until he was almost upon it; that it was too late to stop, and he could do nothing but pass between the truck and the railing to the right. In passing, the stage grazed both the truck and the railing, crushing the hub-cap on the front wheel of the truck, and tearing loose the front fastening by which the timbers were held on the truck.

There is a dispute in the oral testimony as to the position of the truck on the pavement at the time the

stage passed. As we have noticed, the testimony of the driver of the stage is that the only light showing on the truck was to the left side of the pavement. He further testifies that the truck was not traveling parallel with the pavement at the time he passed, but stood diagonally thereto; the front of the truck being farther towards the right hand side of the highway than was the rear. The driver of the stage is supported in this by a written statement of the driver of the truck made shortly after the accident. In that statement, he says that he "was out of place on the road" and did not discover it "until the stage passed," giving the extreme darkness as his excuse. He is also supported by certain undisputed physical facts. The stage was five feet and ten inches wide, with a projection in the form of a tire extending some four inches farther. While the exact width of the truck is not given in feet or inches, it was stated that it was a Ford truck of standard make, with a platform built on the chassis "extending over the wheels."

It is at once apparent, therefore, even if it is assumed that the railing on the right of the highway was at this point the greatest distance from the pavement given by the engineers, that the left side of the truck was a considerable distance to the left of the center of the highway. And that the truck was at an angle with the course of the highway is evidenced by the undisputed fact that the stage struck the truck only on the hub-cap of the front wheel, and that it loosened the fastenings of the timbers only at their front end. Nor is the driver of the truck very positive in his testimony at the trial as to the position of the truck on the highway at the time the stage struck it. While, perhaps, it could be drawn from his testimony that he meant to say that he was driving the truck on the right side of the center of the highway and as nearly parallel

with its course as the curve in the highway permitted, he does not so say directly; and, if he did mean to so say, he is refuted by his testimony concerning other circumstances. He was a witness for the appellant, and on his cross-examination, stated that the oncoming automobile, whose lights blinded him and caused him to stop the truck, passed him on his "right side." It is possible that he misspoke himself, and meant to say that the automobile passed on his left side, but he was not asked to correct his statement when taken for re-examination by the appellant's counsel. On the contrary, the fact was emphasized by the re-examination. He was asked the direct question, whether there was not "another car that passed you on your righthand side, after that car blinded you," to which he answered in the affirmative. Again, the witness testified that, after he stopped the truck, it would not start without the application of power from the engine, and that this was the necessity for cranking it. As the highway at that place had a rather heavy down grade—some two and one half per cent— and as the truck was carrying a considerable load, it would seem that the truck would have started by the mere release of the brakes had it been headed down the highway and not in a crosswise and cramped position. Since, therefore, all of the circumstances and all of the direct and positive testimony point to the fact that the truck was not in its proper position on the highway at the time of the collision, the jury ought not to be permitted to find to the contrary on the testimony of a witness, which, construed in its most favorable light, is indefinite and uncertain, and contrary to his testimony concerning physicial facts.

There is left, then, on this branch of the case, only the question whether the driver of the stage was

guilty of negligence in not discovering the position of the truck in time to avoid running into it. But it must be remembered that the night was dark, rendering invisible any part of the truck or its load; that it was on a curve where the lights from the stage would not illuminate the highway for any considerable distance to the front; that the light on the back end of the timbers was stationary when the driver first saw it; and that it was on the left side of the road, where, if it marked the point of danger, it left ample room for him to proceed on the course he did proceed; and remembered, furthermore, that on entering upon the scene he was violating no rule of the road.

It is true that we have a statute (Rem. Comp. Stat., § 6340, subd. 8) declaring it to be the duty of every person operating or driving any motor vehicle on a public highway when approaching a curve of such highway, where for any reason a clear view for a distance of three hundred yards cannot be had, to hold such vehicle under control and to give signals with frequent blasts or strokes of a horn, bell, or similar device, and to keep to the extreme inside of all curves to the right and the extreme outside of all curves to the left. But we cannot think that all of these provisions are applicable to the situation of the driver of the stage in this instance. The driver was not approaching a curve. On the contrary, he had reached the curve and was well on his way over it· when the collision occurred. There is nothing to show that he could not see all that is ever visible on an automobile on a dark night for the distance mentioned in the statute. That he was travelling at all times on the extreme outside of the curve is not disputed by anyone, and is confirmed by the position the stage was in at the time of the collision. It is not the rule that a driver

of an automobile must stop his automobile or check his speed every time he sees a red light on the highway at risk of being chargeable with negligence. Whether he is so negligent by not so doing, must always depend upon the circumstance. While a red light is a signal of danger, it is also a signal that usually points out the place of danger. If it is at one side of the highway, an approaching driver has the right to assume that it marks the limit of danger, and that the other side of the highway is clear. It is only when the light blocks the highway, or is so placed as to indicate that the passage is so narrowed as not to afford a safe passage within the speed limit, that he is chargeable with negligence if he does not approach with his vehicle under control.

As we view the evidence, therefore, there is nothing upon which to charge the driver of the stage with negligence, and it must follow that the trial court did not err in so holding.

We think, moreover, that the driver of the truck was so far guilty of contributory negligence as to prevent a recovery. The load the truck was carrying was dangerous to other users of the road when carried in the early night-time, even under the most favorable conditions. To attempt to carry it with no lights on the truck and with only a single light on the rear of the timbers, invited disaster, and was negligence in the extreme. Nor was there any necessity for so doing. The operator of the truck had notice, long before he reached the place of the collision and before he had passed the last place they could have been remedied, that the lights on the truck were failing, or at least not functioning as they should and were wont to do, and common prudence dictated that they should there be remedied. But more than this, there was no necessity for his continuing on his way after they en-

tirely went out. Possibly there was no place at the immediate point to turn to the side of the highway, but there were two such places between that place and the place of the collision of which the driver of the truck admits he had knowledge. To continue on under the circumstances was negligence which contributed to the injury and prevents a recovery.

The appellant was not the driver of the truck, but both he and the driver were the common employees of the same master and engaged in a joint enterprise. The negligence of the one is, therefore, necessarily imputed to the other.

The judgment is affirmed.

TOLMAN, C. J., PARKER, ASKREN, and HOLCOMB, JJ., concur.