[No. 26834.    Department One.    May 2, 1938.]

ALFRED P. PETERSEN, *Respondent*, v. INGERSOLL-RAND COMPANY *et al., Appellants.*[1]

[1]Reported in 78 P. (2d) 1083.

*Palmer, Askren & Brethorst* (*B. E. Lutterman,* of counsel), for appellants.

*Charles S. Albert,* for respondent.

MAIN, J.—This action was brought to recover damages for personal injuries. The defendants denied liability and affirmatively pleaded contributory negligence. The cause was tried to the court and a jury, and resulted in a verdict for the defendants. The plaintiff moved for a new trial, and this motion was granted, on the ground that there had been error in the instructions, and that the verdict was not in accordance with the evidence. From the order granting the new trial, the defendants appealed.

The accident which gave rise to the action happened

August 17, 1936, at about twelve o'clock noon, at the intersection of the Clear Lake highway and the Great Northern Railway track, about a mile north of Mount Vernon, in Skagit county. The Clear Lake highway extends east and west, and in the center thereof it is paved to the width of sixteen feet. The Great Northern track will be referred to as extending north and south, though it is a little northeast and southwest. To the southwest of the intersection is a warehouse of the Union Oil Company. This is fifty-five feet south of the highway and some distance west of the railroad track. About 361 feet west of the crossing, there is what is called an advance railroad crossing sign.

The appellant Lane, who was an employee of the other appellant, the Ingersoll-Rand Company, was proceeding east on the highway in an automobile. The respondent, Petersen, and one Sidney E. Allen were proceeding north on the railroad track on what is variously termed a "speeder," a "motor car," and an "inspection car." This car was four feet square. Its platform was one and one-half feet above the level of the rails, and it weighed 625 pounds, with accommodations for two passengers. It was propelled by a gasoline motor and was capable of a speed of twenty-five miles an hour. The collision occurred when the front end of the speeder was about at the center of the pavement, and it was struck by the right front of the automobile, and the respondent sustained the injuries for which he sought recovery. Allen was operating the speeder at the time of the collision.

The questions, generally speaking, to be determined upon this appeal are (a) whether Lane was guilty of negligence; (b) whether Allen was guilty of contributory negligence; and (c) if he was, whether that negligence was attributable to the respondent, Petersen.

■ On the question of Lane's negligence, this was, obviously, for the jury, as he testified that, as he approached the crossing, he was proceeding at thirty or thirty-five miles an hour and did not slacken his speed, and that he did not see the speeder until almost the instant of impact. Another witness, who saw the accident, testified that Lane was proceeding at from fifty to sixty miles an hour and did not slacken his speed.

■ The jury was instructed that it was the duty of the operator of the speeder to ring a bell or sound a whistle as it approached the crossing, and to continue ringing such bell or sounding such whistle until it had passed the crossing. In connection with this, it was said that a violation of this duty was negligence. The instruction is based upon Rem. Rev. Stat., § 2528 [P. C. § 9091], which provides that:

"Every engineer driving a locomotive on any railway who shall fail to ring the bell or sound the whistle upon such locomotive, or cause the same to be rung or sounded at least eighty rods from any place where such railway crosses a traveled road or street on the same level (except in cities), or to continue the ringing of such bell or sounding of such whistle until such locomotive shall have crossed such road or street, shall be guilty of misdemeanor."

The trial court thought the giving of this instruction was error, and this was one of the reasons for granting the new trial. The speeder in this case had no bell, whistle, or horn on it. It was not equipped for any other use than carrying one or two persons over the track, and was largely used for inspection purposes.

In *Yazoo & M. V. R. Co. v. Day*, 120 Miss. 296, 82 So. 148, it was held that a statute requiring locomotive engineers to ring a bell or sound a whistle when approaching a highway crossing did not apply to motor cars used by section hands.

The appellants, as sustaining the correctness of the instruction, rely very largely upon the cases of *Sanderson v. Hartford Eastern R. Co.*, 159 Wash. 472, 294 Pac. 241, and *Haaga v. Saginaw Logging Co.*, 165 Wash. 367, 5 P. (2d) 505. In each of those cases, it was held that a gasoline-propelled motor car, equipped for use on a railway track, was within the contemplation of the statute; but the motor cars in those cases were very different from the speeder in this case. One was equipped to haul a trailer, and the other was heavier and capable of hauling or moving freight cars. To hold that the statute applies to the speeder in this case would require an unreasonable extension of the doctrine of the cases just referred to. The giving of the instruction in accordance with the terms of the statute was error and furnished a proper basis for granting the new trial.

■ It is also said that it was the duty of the operator of the speeder, before entering the highway, to give some warning, even if the statute does not apply, as we have held. But whether a warning should be given would depend upon whether, in the exercise of ordinary care, it was necessary; and it cannot be held, as a matter of law, that failure to give a warning was negligence.

■ It is further contended that Allen was guilty of negligence in failing to keep a proper lookout for automobiles approaching on the highway. There is a dispute in the evidence as to whether there was a growth of brush and foliage along the west side of the track which would obscure one's view of the highway when approaching the crossing on the railroad track or obscure the view of the speeder on the railroad track of one approaching the crossing on the highway in an automobile. Allen and the respondent both

testified that, as they came north, before their view was obscured by the warehouse of the Union Oil Company, they looked to the left and saw no automobile approaching from that direction. After passing the warehouse and when about eighty feet from the crossing, they again looked to the left to see if a car was approaching from the west and saw none. They then turned their attention to the east, where an automobile was approaching from that direction. They did not look to the west again until the speeder was four feet inside of the highway, when Allen looked to the west and saw Lane approaching in the automobile fifty or seventy-five feet away. He attempted to stop the speeder, but the collision happened, as above stated. As the speeder approached the highway, it was traveling ten or fifteen miles an hour, but, before entering the crossing, the power had been thrown off and it coasted into the highway at a speed variously estimated at from three to five miles an hour.

It is said that Allen and the respondent were guilty of contributory negligence for failing to again look to the left before entering upon the crossing. As above stated, there was, 361 feet west of the crossing, an advance railroad crossing sign. Had Allen and Petersen looked to the left and seen the automobile, they would have been justified in assuming that it would slacken its speed in conformity with the requirement of Rem. Rev. Stat., § 6350 [P. C. § 234], which provides that the operator of a vehicle on the highway approaching a railroad crossing, after passing an advance railroad crossing sign, shall reduce the speed of the vehicle until its rate of speed, at a point fifty feet from the crossing, shall not exceed twelve miles an hour. *Panos v. Sourwine,* 142 Wash. 15, 251 Pac. 883. This was not done by Lane, and, as he testified, he maintained a speed of from thirty to thirty-

five miles per hour until almost the instant of impact, and another witness testified that his speed was from fifty to sixty miles per hour. Allen and the respondent were justified in assuming that Lane, on approaching the crossing, would not travel in excess of that allowed by law until they had actual notice, or, in the exercise of reasonable care, should have known, that the speed limit was being exceeded. *Brandt v. Northern Pac. R. Co.*, 105 Wash. 138, 177 Pac. 806, 181 Pac. 682; *Nabours v. Seattle*, 113 Wash. 557, 194 Pac. 800; *West Coast Transport Co. v. Landin*, 187 Wash. 556, 60 P. (2d) 704. Neither Allen nor the respondent were guilty of contributory negligence, as a matter of law, in failing to look again before entering the intersection.

We now come to the question of whether Allen's negligence, if he was negligent, would be imputed to the respondent. Allen was district roadmaster for the Great Northern, and Petersen was an inventory clerk for the Great Northern in the accounting department. Each year, that department takes a check of the materials, that is, an inventory, and in this work all materials along the right of way, such as unused rails or ties, are accounted for. This is the work that the respondent and Allen were doing the day the accident happened. Without further detailing the facts, it may be said that Allen and the respondent, on the day of the accident, were engaged in a common purpose or joint enterprise, and the negligence of Allen, if any, would be imputable to the respondent. *Martin v. Puget Sound Electric R.*, 136 Wash. 663, 241 Pac. 360; *Rosenstrom v. North Bend Stage Line*, 154 Wash. 57, 280 Pac. 932.

The case of *Cathey v. Seattle Electric Co.*, 58 Wash. 176, 108 Pac. 443, is based upon different facts and

would not apply to the facts as they appear in the record now before us.

The order granting the new trial will be affirmed.

STEINERT, C. J., HOLCOMB, GERAGHTY, and SIMPSON, JJ., concur.

[1]Reported in 78 P. (2d) 1090.