[No. 33624. Department Two. December 6, 1956.]

HARRIET E. VEEK, *as Administratrix, Appellant,* v. TACOMA SUBURBAN LINES, INC., *et al., Respondents.*[1]

[1]Reported in 304 P. (2d) 700.

*O'Leary, Meyer & O'Leary*, for appellant.

*Pearson, Anderson & Pearson*, for respondents.

FINLEY, J.—This suit was instituted by Harriet E. Veek, as administratrix of the estate of her deceased husband, Laurence M. Veek, to recover damages for his alleged wrongful death. He died as the result of a collision between a United States government fire truck, in which he was riding, and a bus owned by defendant corporation.

At the time of his death, Mr. Veek was a civil service employee of the United States government, working as a member of the Fort Lewis, Washington, fire department. On June 6, 1954, at about ten-fifty p. m., a fire alarm was received at the Fort Lewis fire station. Mr. Veek was the crew chief of the three-man crew which responded to the fire alarm. The fire truck was driven by William Boag.

Immediately prior to the collision, the fire truck was traveling in a westerly direction on 17th street; defendants' bus was traveling in a southerly direction on "C" street. At the intersection of 17th street and "C" street, the traffic proceeding on "C" street is protected by an octagonal stop-sign situated on the northeast corner of the intersection.

The undisputed evidence shows that William Boag, driver of the fire truck, commenced accelerating it in the block adjacent to the intersection where the collision occurred. When he was about one-half block away from "C" street, Boag noticed a bus going through the intersection. This particular bus preceded a second one, apparently by about half of a block. At the time, however, Boag did not see the second bus. Upon seeing the first bus in the intersection, Boag momentarily applied his brakes. Thereafter, he speeded up again by putting the accelerator to the floorboard of the fire truck. He did not slow down or release the accelerator again prior to the time he collided with the second bus in the intersection. The front end of the fire truck collided with the left side of the bus, ten to twelve feet from the front end of the bus toward the rear.

Boag's testimony indicates that he did not see the bus which was involved in the collision until it was too late for him to avoid the accident; that he had only a quick glimpse of the bus; that the decedent, who apparently saw the bus at about the same time, shouted, and that Boag only had time to brace himself by straightening his arms before the collision occurred.

The surviving occupants of the fire truck testified that the siren on the truck was in continuous operation, as were the flashing red lights on both the front and rear of the fire

truck. On the other hand, three passengers on the bus, who had been seated approximately eight or twelve feet behind the bus driver, testified that they did not hear a siren prior to the accident. Mr. Haney, the driver of the bus, testified as follows:

"Q Now, would you tell us when you heard that burst of the siren, before you saw the red light, or after you saw the red light? A After I saw the red light. Q Can you describe that burst of the siren? A I can. It was—it was just simply 'whoo' and that is all there was to it. Q Was it that short? A It was that short and they hit in that space of time. Q Mr. Haney, are you sure that you didn't hear the siren previous to seeing the red light? A I am positive."

From this evidence, the trial court concluded that, as a matter of law, the driver of the fire truck was negligent in that he did not look for or see the defendants' bus prior to the time that he entered the intersection; that his negligence, as a matter of law, was imputed to the decedent. Accordingly, the trial judge entered an order dismissing the plaintiff's complaint with prejudice. The plaintiff has appealed.

The standard of care required in the operation of an emergency vehicle is set forth in RCW 46.08.050, as follows:

"The provisions of this title relating to the operation of vehicles upon the public highways of this state shall not apply:

"(1) To any authorized emergency vehicle properly equipped as required by law and actually responding to an emergency call or in immediate pursuit of an actual or suspected violator of the law, within the purpose for which such emergency vehicle has been authorized, but this shall not relieve the operator of an authorized emergency vehicle *of the duty to operate with due regard for the safety of all persons using the public highway, nor shall it protect the operator of any such emergency vehicle from the consequences of a reckless disregard for the safety of others*:
. . ." (Italics ours.)

In the recent case of *Lakoduk v. Cruger*, 48 Wn. (2d) 642, 296 P. (2d) 690, this court had occasion to interpret and apply the provisions of the above statute. The *Cruger* case concerned the conduct of the driver of a fire

truck under circumstances somewhat similar to those in the case at bar. In holding that the driver of the fire truck *was not guilty of negligence as a matter of law,* we noted that California has a statute comparable to ours. We quoted with approval and relied upon *Duff v. Schaefer Ambulance Service,* 132 Cal. App. (2d) 655, 283 P. (2d) 91, wherein the California court commented upon and interpreted the California statute as follows:

"The 'due regard' phrase is essentially satisfied (1) *when the driver of the emergency vehicle has, by suitable warning, given the users of the highway an opportunity to yield the right of way, and (2) if, having discovered the peril in which another has unknowingly or negligently become involved despite the operation of the required warning devices, the driver reasonably exercises any last clear chance to avoid the accident.* Such an interpretation prevents an emasculation of the legislative intent. . . . 'So pertinent is the interpretation of the phrase in *Lucas v. City of Los Angeles,* 10 Cal. 2d 476, where it was said at page 483 [75 P. (2d) 599]: *"If the driver of an emergency vehicle is at all times required to drive with due regard for the safety of the public as all other drivers are required to do, then all the provisions of these statutes relating to emergency vehicles become meaningless and no privileges are granted to them. But if his 'due regard' for the safety of others means that he should, by suitable warning, give others a reasonable opportunity to yield the right of way, the statutes become workable for the purposes intended."* And while the statute does not "protect [the] driver from the consequences of an arbitrary exercise of the privileges" there granted, *"an arbitrary exercise"* of them *"cannot be predicated upon the elements of speed and failure to observe other rules of the road where a warning has been given."* . . . "In such cases speed, right of way and all other 'rules of the road' are out of the picture." ' " (Italics ours.)

In view of the circumstances presented by the evidence in this case, we are convinced that the question of whether the fire engine was being operated in compliance with the standard of care, as prescribed in RCW 46.08.050, was one of fact, to be determined by the jury under proper instructions from the trial court. Therefore, the trial court

erred in holding that the driver of the fire truck was negligent as a matter of law.

The next question to be considered is whether the negligence, if any, of the fire truck driver should be imputed to the decedent as a matter of law. In holding that the driver's negligence was imputed to the decedent, the trial court relied on *Martin v. Puget Sound Electric R.*, 136 Wash. 663, 241 Pac. 360, and *Petersen v. Ingersoll-Rand Co.*, 194 Wash. 584, 78 P. (2d) 1083, wherein it was held that fellow servants, working together in the course of their common employment, were engaged in a joint enterprise; therefore, the negligence of one was necessarily imputed to the other. However, the authority of these cases as support for the trial court's decision is highly dubious, since they apparently were overruled by the decision in *Carboneau v. Peterson*, 1 Wn. (2d) 347, 95 P. (2d) 1043.

In the *Carboneau* case, *supra*, the court exhaustively examined the cases relative to the law of joint venturers and made the following pertinent observations:

"The analysis of the foregoing twenty-seven cases leads to at least one irrefutable conclusion, namely, that the case of *Rosenstrom v. North Bend Stage Line*, *supra*, has pronounced, and is, the law in this state with respect to joint adventures wherein the use of automobiles is involved. Although, from what appears in the opinions in some of the cases, it may be difficult to demonstrate that the rule has at all times been consistently applied in its full extent and vigor, there can be no doubt of the prevalence and fixity of the rule itself. Its recurrent citation has made it a rubric upon this branch of the law.

"Briefly stated, a joint adventure arises out of, and must have its origin in, a contract, express or implied, in which the parties thereto agree to enter into an undertaking in the performance of which they have a common purpose and in the objects or purposes of which they have a community of interest, and, further, a contract in which each of the parties has an equal right to a voice in the manner of its performance and an equal right of control over the agencies used in the performance. Thus, we note (1) a contract, (2) a common purpose, (3) a community of interest, (4) equal right to a voice, accompanied by an equal right of control.

"The *sine qua non* of the relationship is a contract, whether it be express or implied. As a legal concept, a joint adventure is not a status created or imposed by law, but is a relationship voluntarily assumed and arising wholly *ex contractu.* The essence of a contract is that it binds the parties who enter into it and, when made, obligates them to perform it, and failure of any of them to perform constitutes, in law, a breach of contract. A mere agreement, or concord of minds, to accompany one another upon an excursion, but without an intent to enter into mutually binding obligations, is not sufficient to create the relationship of joint adventure."

In referring to the *Carboneau* case, in *Finn v. Drtina,* 30 Wn. (2d) 814, 194 P. (2d) 347, 2 A. L. R. (2d) 919, the court stated:

"Whatever may be said in regard to the cases decided prior to the *Carboneau* case, *supra,* it is now firmly established that the rules announced in the *Carboneau* case are now the rules to be applied in determining whether or not in a given case the relationship of joint adventurer exists."

Of additional significance is the fact that, although the rule announced in the *Martin* and *Petersen* cases, *supra,* is followed in a few jurisdictions, it is definitely not in accord with the weight of authority.

"One group of cases, now definitely very much in the minority, have found a joint enterprise in the mere association of the driver and the passenger in the use of the vehicle for a purpose in which they have a common interest. . . . fellow servants riding together in the course of their employment, have at various times been found to be engaged in a joint enterprise. [Citing in the footnote, *Martin v. Puget Sound Electric Ry., supra,*] . . . Most of the jurisdictions in which these decisions appear have departed from them in later cases, demanding something more than the mere showing of a common purpose. [Citing in the footnote *Rosenstrom v. North Bend Stage Line,* 154 Wash. 57, 280 P. 932]" Prosser on Torts 491, 493, § 65, Joint Enterprise.

"*d. Fellow servants in vehicle.* The fact that the plaintiff and the driver are fellow-servants of a common master and are both acting in the course of their master's employment and in furtherance of his business does not make them participants in a joint enterprise, and this is true irrespec-

tive of whether the vehicle is owned by the master, the fellow-servant driver or by the plaintiff himself." Restatement, Torts, 1275, § 491.

"The negligence of the driver of a vehicle is not generally imputed to another occupant therein, when the relation between the parties is that of fellow servants." 5-6 Huddy (9th ed.), Cyclopedia of Automobile Law 293, § 151.

In addition to the above authorities, the following cases have held that fellow servants, as such, are not necessarily participants in a joint enterprise: *Melville v. State of Maryland*, 155 F. (2d) 440; *Martin v. Yazoo & M. R. Co.* (La. App.), 181 So. 571; *Ratcliff v. Myers*, 382 Pa. 196, 113 A. (2d) 558; *Bartholomew v. Oregonian Pub. Co.*, 188 Ore. 407, 216 P. (2d) 257. The same rule has been applied to cases involving firemen. See *Oklahoma R. Co. v. Thomas*, 63 Okla. 219, 164 Pac. 120; *Brockstedt v. Meltzer*, N. J. Err. & App., 111 Atl. 812; *Burleigh v. St. Louis Transit Co.*, 124 Mo. App. 724, 102 S. W. 621; *McBride v. Des Moines City R. Co.*, 134 Iowa 398, 109 N. W. 618; *Norwood Transp. Co. v. Crossett*, 207 Ala. 222, 92 So. 461; *Ring v. Minneapolis St. R. Co.*, 173 Minn. 265, 217 N. W. 130. See, also, 38 Am. Jur. 942, § 252; 19 L. R. A. (N.S.) 629.

On the basis of the foregoing discussion and the authorities cited, we are convinced that the driver and the decedent were not engaged in a joint enterprise.

Respondent makes the additional argument, however, that, regardless of the existence of a joint enterprise, the negligence, if any, of the driver should be imputed to the decedent because the latter had the right of control. This brings us to the question of whether the negligence, if any, of the driver of a fire truck is imputed as a matter of law to another employee who holds a superior position and has the right to control the crew of firemen, including the driver of the fire truck.

It is a well recognized principle that public officers are not liable for the negligence of their subordinates in the operation of a vehicle unless they acquiesce or co-operate in the act complained of, or direct or encourage it. *Dowler v. Johnson*, 225 N. Y. 39, 121 N. E. 487, 3 A. L. R. 146; *Ar-*

*macost v. Conservation Comm. of West Virginia,* 126 F. Supp. 414; 3 A. L. R. 149 Anno: Responsibility of Public Officer for Negligence of Subordinate in Operation of Vehicle; Huddy, Cyclopedia of Automobile Law, *supra.*

Although the right of control over the driver is not sufficient by itself to justify an application of the doctrine of vicarious liability, it is a factor to be considered with all other circumstances in determining whether the decedent was guilty of independent contributory negligence which would be a bar to recovery. In other words, the negligence, if any, of the driver would become a factor in the instant case only if the decedent failed properly to supervise or direct the driver after the decedent had a reasonable opportunity to see or to know that the driver was operating (in the language of RCW 46.08.050) the fire truck "without due regard for the safety of others," and whether the decedent was negligent in failing to exercise his authority, or whether he exercised it in a negligent manner, was a question of fact for the jury. *Rich v. Warren,* 123 F. (2d) 198; *Vogler v. Jones,* 199 Okla. 156, 186 P. (2d) 315; *Dowler v. Johnson, supra.*

In view of the foregoing authorities and the principles announced therein, we are of the opinion that the trial court erred in holding that the driver of the fire truck was guilty of negligence as a matter of law, and that such negligence was imputed, as a matter of law, to the decedent. As demonstrated hereinbefore, the negligence of the driver, as well as that of the decedent, were questions of fact to be determined by the jury under proper instructions. It is our best judgment that the trial court should be reversed and that the appellant should be granted a new trial. It is so ordered.

MALLERY, HILL, and WEAVER, JJ., concur.

January 28, 1957. Petition for rehearing denied.