Ruth O. FOX, Ruth O. Fox, Administratrix of the Estate of Henry Wilbur Fox, Deceased, Plaintiff-Appellee,

v.

HAYES FREIGHT LINES, Inc., Defendant-Appellant.

No. 11723.

United States Court of Appeals Seventh Circuit.

May 22, 1957.

Rehearing Denied June 15, 1957.

James J. Stewart and Alvin E. Meyer, Indianapolis, Ind., Murray, Mannon, Fairchild & Stewart, Indianapolis, Ind., of counsel, for defendant-appellant.

Michael L. Fansler, Gustav H. Dongus, Indianapolis, Ind., James B. Davison, Connersville, Ind., Fansler, Fauvre, Dongus & Chambers, Indianapolis, Ind., of counsel, for plaintiff-appellee.

Before DUFFY, Chief Judge, and FINNEGAN and SCHNACKENBERG, Circuit Judges.

DUFFY, Chief Judge.

The plaintiff herein filed a complaint in two counts seeking to recover damages for personal injuries to the plaintiff and for the death of her husband occasioned by the alleged negligence of defendant in the operation of two of its motor trucks. Jurisdiction was based upon diversity of citizenship and requi-

site amount. The verdict of the jury was favorable to the plaintiff and awarded her $25,000 for her personal injuries and $15,000 by reason of the death of her husband. The trial court overruled defendant's motions for judgment notwithstanding the verdict and for a new trial.

On December 17, 1953, at about 3:25 o'clock a.m., the plaintiff was driving an automobile owned by her husband, Henry Wilbur Fox, in an easterly direction upon a public highway known as U. S. Highway No. 40 between Centerville, Indiana, and Richmond, Indiana, and had reached a point approximately one and a half miles west of the corporate limits of the City of Richmond.

Defendant is engaged in the trucking business and used Terrell's Garage located on Highway 40 as a regular stopping place for its trucks and drivers. At this point, U. S. Highway 40 is a four-lane black top highway extending east and west. At the time of the accident it was cold and some powdered snow would occasionally blow across the road.

On the day before the collision, two of defendant's drivers, Tate and Hasty, stopped at Terrell's Garage, left their truck units there and went into Richmond. Sometime after midnight they came back to Terrell's in order to continue their trip. One of the tractor-trailer units which operated with a diesel engine would not start. The drivers concluded they would have to push the diesel in order to get it started. It was decided to push the truck which would not start by placing the rear end of the operable truck against the rear end of the diesel truck. Hasty lighted a 20-minute red fusee and placed it near the center of the two eastbound driving lanes. By reversing the truck, he started to push Tate in an easterly direction in the extreme south lane of the highway. After doing this for some distance and being unable to get the truck started, he and Tate switched ve-

hicles. The pushing process continued in an easterly direction over and past the crest of a slight grade. Tate, who was driving the pushing unit, stopped, and at about the same moment the front end of his unit was run into by the automobile driven by Mrs. Fox. During the pushing operation, Tate had the left front door of his truck open, and was looking toward the rear and did not see Mrs. Fox approaching. Tate testifies his head lights were not lighted, and his spot light was tilted at about a 45 degree angle and to the right so as not to shine in the eyes of drivers of approaching vehicles. The point of the collision was 1,500 to 1,600 feet east from the fusee and 965 feet from the crest of the incline.

Plaintiff saw a red burning fusee lying on its side on the yellow line in the middle of the highway. When she first noticed it she was driving 40 to 45 miles per hour, but then reduced her speed and shifted into second gear. She testified she "proceeded with caution" and gradually resumed speed. She first saw the tractor-trailer when she was about one and a half car lengths from it. She testified there were no lights on the trucks, nor any flares, pot torches or lanterns nearby. She was driving with her head lights on but with the beam deflected toward the pavement.

At about 3:05 o'clock that morning the witness McNevin was driving east on Highway 40 toward Richmond. He saw the red fusee burning. When he reached a point about 60 feet [1] from the first truck, its head lights came on. He swerved to the shoulder of the highway and drove between the two trucks. He testified he "had to zigzag between the two trucks." He was sure there were no lights burning on the second truck which was facing east.

Police officers Ryan and Cycle of the City of Richmond arrived at the scene shortly after the collision. Ryan testified he saw no lights on the two tractor-

---

1. McNevin also testified he was 200 feet distant when the truck lights were turned **on.**

trailers nor any flares or fusees. Cycle testified to the same effect except he was not sure whether running or clearance lights across the top of the tractor-trailer truck were lighted. Officer Clark who arrived with the ambulance saw no lights on the tractor-trailer; no lights around the top; no spot lights, and no lighted flares or torches. It was disclosed by the evidence the drivers of the tractor-trailer trucks had available for their use additional fusees and flare pots.

 A somewhat detailed statement of facts favorable to plaintiff has been set forth to explain why we do not agree with defendant's principal contention that plaintiff was guilty of contributory negligence as a matter of law.

 In Indiana, as elsewhere, contributory negligence, ordinarily is a question of fact for the jury. Only in cases where the facts are undisputed and but a single inference can be drawn therefrom, can the reviewing court say that a course of conduct does or does not constitute contributory negligence as a matter of law. Associated Truck Lines, Inc., v. Velthouse, 227 Ind. 139, 84 N.E.2d 54; Northwestern Transit, Inc., v. Wagner, 223 Ind. 447, 61 N.E.2d 591; Schlarb v. Henderson, 211 Ind. 1, 4 N.E.2d 205.

In Associated Truck Lines, Inc., v. Velthouse, supra, plaintiff's decedent, while driving his automobile in the darkness of early morning, ran into the defendant's trailer which was parked in the outside lane of a four-way highway without lights. As the accident occurred within the corporate limits of a municipality, the Indiana statute did not require that flares, fusees or lanterns be utilized. In holding that plaintiff's decedent was not guilty of contributory negligence as a matter of law, the Indiana Supreme Court stated, 227 Ind. at pages 153–154, 84 N.E.2d at pages 59–60: "It is well established that the driver of an automobile or truck proceeding along a highway has a right to presume that there will not be a truck,

trailer or other obstacle stalled in the highway without head lights or tail lights and without the danger signals required by statute being exhibited."

True, a red light is a danger signal, but it is a signal which usually points out the place of danger. Martin v. Puget Sound Electric Railway, 136 Wash. 663, 241 P. 360. In the case at bar the place of danger was 1600 feet east of the fusee. Plaintiff slowed down and put her car in second gear when she saw the fusee "just lying loose" in the middle of the four-lane highway. She then proceeded with caution gradually resuming her speed. We think Billman v. Kroger Co., 7 Cir., 185 F.2d 120, relied on by defendant is distinguishable. There the flares marked the exact point of danger, and the plaintiff drove into the danger zone at too high a rate of speed to avoid the collision.

 Defendant argues that the damages of $25,000 awarded for plaintiff's personal injuries are excessive. Plaintiff sustained the following physical injuries: A broken left knee cap, a cut on the right knee cap, three broken ribs, a deep laceration on her chin requiring twelve or thirteen stitches, a sprained right ankle, multiple bruises scattered over her body and a slight pneumothorax. She was in the hospital for thirty days under constant medical care. Her broken knee cap was surgically repaired with a permanent wire suture, and her left leg was placed in a cast. She was on crutches for four or five weeks after she left the hospital. At the time of the trial, about two years after the accident, plaintiff, then forty-nine years of age, testified she still suffered pain, with no power from her hip to her knee in the left leg. She had difficulty lifting because of chest pains. That prior to the accident her health had been perfect and that she had been able to lift cement blocks in helping to build her home.

It may be admitted that the award made by the jury was generous, but we cannot say that there was any abuse of

**308**

the trial court's discretion because it did not set the verdict aside, and, in our judgment, the award was not "grossly excessive." Bucher v. Krause, 7 Cir., 200 F.2d 576, 587.

Defendant claims error because the Court granted Instruction No. 24. We have given careful consideration and we hold that the trial court did not commit error in giving that Instruction.

Judgment affirmed.